ARKANSAS COLD STORAGE & ICE COMPANY *v.* FULBRIGHT.

Opinion delivered June 28, 1926.

1. FIXTURES—TRADE FIXTURES—REMOVABILITY.—The general rule as to the removal of trade fixtures is more favorable where the relation of landlord and tenant exists than in regard to any other relationship.

2. FIXTURES—TEST OF REMOVABILITY.—The principal tests of the removability of trade fixtures are the intention of the party making the annexation, his situation and relation to the owner of the soil, and whether the annexation was intended to be permanent.

3. FIXTURES—REMOVABILITY OF TENANT'S MACHINERY.—Where machinery used in making ice-cream and soft drinks was by a tenant placed in a rented building solely for the use and benefit of the tenant in the operation of his business, without any inten-

tion of making an annexation for the purpose of improving the land, the fixtures were removable where no material injury to the freehold would result from their removal.

Appeal from Washington Chancery Court; *Sam Williams,* Chancellor; affirmed.

*Walker & Walker* and *W. N. Ivie,* for appellant.

*J. W. Grabiel* and *John W. Nance,* for appellee.

McCULLOCH, C. J. This litigation involves the ownership of property which constituted the machinery and equipment used in making ice-cream and soft drinks. The articles involved in the controversy are described as follows:

| | |
|---|---:|
| One bottle-rinsing machine of the value of | $ 400.00 |
| One bottle soaker | 300.00 |
| One bottle carbonator | 500.00 |
| One bottling machine | 1,500.00 |
| Two centrifugal pumps | 400.00 |
| One ice-cream freezer | 500.00 |
| One ice cooler and freezer combined | 300.00 |
| One cream mixer | 300.00 |
| One emulsifier | 500.00 |
| One cooling machine | 200.00 |
| Seven electric motors | 500.00 |
| Two ammonia compressors | 1,500.00 |

The property was situated upon premises owned by appellant, but was removed therefrom by appellees, the purchasers at a judicial sale passing the title of former occupants of the building, who were tenants of appellant. The sole question involved in the case is whether the items of property in controversy were irremovable fixtures attached to the soil owned by appellant, or whether they were movable trade fixtures placed on the premises by the tenants. There is little, if any, controversy about the facts in the case.

Appellant is a corporation, and for many years has been engaged in the business of cold storage and the manufacture and sale of ice in the city of Fayetteville. Appellant owned its own plant and vacant lots adjoining

the plant, and, about the year 1906, appellant erected a small frame building on the vacant lot and permitted D. M. Allen to occupy the same for the purpose of engaging in the manufacture of ice-cream and soft drinks. At first no charge was made by appellant for the rent of the premises, and the right of occupancy was granted to Allen merely in consideration of Allen becoming a customer for the purchase and use of ice from appellant's factory. Allen put in the machinery and equipment and operated the business for a few months, and then sold an interest to Winkleman, and the two subsequently sold to Fulbright. Fulbright sold an interest in the business to Waugh, and the two operated the business for a number of years under the copartnership name of Fayetteville Ice Company. Waugh died in 1922, and the business was conducted by Fulbright as surviving partner. Then Fulbright died, and the business of the copartnership was wound up and the property sold by a commissioner under decree of the chancery court. Appellee became the purchaser, and removed the machinery and equipment from the building, and appellant intervened, claiming title to the property in controversy.

It appears from the testimony that the copartnership composing the Fayetteville Ice Company and their predecessors in the operation of the business established there, increased the size of the buildings on the property owned by appellant, constructed concrete floors in the building, and put in all of the equipment for the manufacturing plant, including the property in controversy. A portion of the property in controversy was actually attached to the building or to the soil in some way, and the remainder was heavy machinery used in the manufacture of ice-cream and soft drinks. The two ammonia compressors weighed about 1,800 pounds, and rested on a concrete floor, and were supported by rods which ran through the floor and into the ground to a depth of two feet. The compressors were bolted to these rods and the rods were fastened in the concrete. The emulsifier and the cooling machine were fastened to the water

pipes, which came up from the ground and ran into them. The two pumps were attached to the building, and also the ice-cream cooler and freezer, which weighed about 600 pounds. All of the other items were heavy articles, resting on the concrete floor. In fact, most of the property was motor-driven and had to be anchored to the floor or wall. The motors were fastened to frames on the wall.

There is no testimony tending to establish any express contract between appellant and the occupants of the building with respect to the ownership of the property in controversy or the right to remove the same. The property was, as before stated, occupied by the predecessors of appellees as tenants of appellant, and the permission to occupy was granted in order for appellant to secure a purchaser of its ice produced in the adjoining factory. At first no rent was charged, but in later years twenty-five dollars per month was charged as rent.

The chancery court decided that the property in controversy constituted removable trade fixtures, and our conclusion is that this decision was correct. It is very generally held by the courts and text-writers that the rule as to removal of trade fixtures is more favorable where the relation of landlord and tenant exists than in regard to any other relationship of the parties (Ewell on Fixtures, p. 137), and this court has recognized that favorable aspect of the rule. *Stone* v. *Suckle,* 145 Ark. 387, 224 S. W. 735. The case of *Choate* v. *Kimball,* 56 Ark. 55, 19 S. W. 108, is a leading one in this court, and in that case we laid down, as the principal tests of removability, the intention of the party making the annexation and his situation and relation to the owner of the soil—whether the annexation was intended to be made as a permanent accession to the freehold or merely for the benefit of the party making it. It is apparent from the facts in this case that the property in controversy was placed in the building by the predecessors of appellees solely for their own use and benefit in the operation of the business in which

they were then engaged, and that there was no intention to make the annexation for the purpose of improving the property. The annexation was therefore altogether for their own benefit and not for the benefit of the landlord. This is manifested by the fact that the building originally constructed by appellant and turned over to the tenants was of little value, and the additions thereto and annexations have been gradual, in accordance with the growth of the business, hence there was no material injury to the freehold by the removal of these fixtures.

Decree affirmed.