## CHEROKEE CARPET MILLS, INC. *v.*
## MANLY JAIL WORKS, Inc.

74-343                                                       521 S.W. 2d 528

### Opinion delivered April 21, 1975

*Mays and Landers,* for appellant.

*Arnold, Arnold & Lavender, Ltd.,* for appellee.

CONLEY BYRD, Justice. The sole issue on this appeal is whether a contract with appellee, Manly Jail Works, Inc.,[1] to design and construct a 12,122 gallon water tank for use in the carpet plant of appellant, Cherokee Carpet Mills, Inc., is subject to the 5 year statute of limitations set forth in Ark. Stat. Ann. § 37-237 (Supp. 1973). That statute provides:

> "No action in contract (whether oral or written, sealed or unsealed) to recover damages caused by any deficiency in the design, planning, supervision or observation of construction or the construction and repair of any improvement to real property or for injury to property, real or personal, caused by such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision or observation of construction or the construction or repair of such improvement more than five (5) years after substantial completion of same."

Upon a demurrer to the compalint as amended, the trial

---

[1] Westrock Mechanical Contractors, Inc., has gone into bankruptcy and the cause has not been revived in the name of the trustee in bankruptcy.

court held the statute applicable and dismissed the cause of action. We agree with the trial court.

The compaint alleges that appellee, pursuant to a contract attached to the complaint, manufactured the tank and shipped it to appellant's plant at Lewisville, Arkansas, on or about March 1, 1967, and that upon arrival the tank was installed in appellant's plant by Westrock Mechanical Contractors, Inc. That while using the tank in the operation of the plant, under the conditions set forth in the contract, on May 25, 1970, the tank ruptured causing the dyes contained therein to be sprayed into other parts of the plant and resulting in the damages prayed for. The specific allegation as to appellee was as follows:

> "That the rupture of said baffle or wall within the storage tank and the resulting rupture in the exterior of the tank were caused by the failure of the defendant, Manly Jail Works, Inc., to perform its agreement as contained in Exhibit "A" attached hereto with the plaintiff in that said tank was improperly designed, improperly manufactured and otherwise deficient to be operated under the conditions and specifications set forth in the contract between the plaintiff and the defendant, Manly Jail Works, Inc., as contained in Exhibit "A" attached hereto; . . ."

The contract attached to the complaint shows an order for the tank containing three different compartments with mixing motors and turbines and with internal pipe and couplings in the tank wall. The tank was to be shop tested at 55 PSI for a working pressure of 27 PSI.

Thereafter appellant filed an amendment to its complaint wherein it was alleged:

> "THAT said storage tank was subsequently manufactured by the Defendant, MANLY JAIL WORKS INC., and shipped from the plant of said Defendant to the plaint of the Plaintiff at Lewisville, Arkansas, on or about March 1, 1967; that upon the arrival of said tank at the plant of the Plaintiff, it was

placed upon a cradle in the plant of the Plaintiff by the Defendant, WESTROCK MECHANICAL CONTRACTORS, INC.; that said tank was not bolted or otherwise attached to the cradle or any other part of the building or real estate of the Plaintiff, but was interconnected with other parts of the machinery and equipment of the Plaintiff; that said tank was, at the time of installation and has been ever since a part of the machinery and equipment of the Plaintiff. . . ."

The appellant both here, and in the trial court, contends that the issue of whether the storage tank was an improvement to real property, within the meaning of Ark. Stat. Ann. § 37-237 (Supp. 1973), *supra,* is a factual question. In doing so appellant places much stress upon the allegation that "said tank was not bolted or otherwise attached to the cradle or any other part of the building or real estate of the plaintiff." Appellant's emphasis, however, ignore that part of the amended complaint which admits that the tank . . . "was interconnected with other parts of the machinery and equipment of the plaintiff; that said tank was, at the time of installation and has been ever since a part of the machinery and equipment of the plaintiff." In *Alwes* v. *Richheimer,* 185 Ark. 535, 47 S.W. 2d 1084 (1932), the issue was whether the furniture and fixtures in a theater went with a mortgage to the real estate or a mortgage on personalty. In holding that it was an appurtenance to the real estate and after pointing out that the furniture and fixtures were a part of the improvements in the building for the purpose for which it was constructed, we said: "the tendency of modern decisions, both English and American, 'is against the common-law doctrine that mode of annexation is the criterion, whether slight and temporary, or immovable and permanent, and in favor of declaring all things to be fixtures which are attached to the realty with a view to the purposes for which it is held or employed.'" Appellant does not contend that its entire installation of machinery and equipment was not "an improvement to real property" and when we consider that the tank in question was put into position and interconnected with other parts of the machinery and equipment, we can think of no fact situation that would differentiate the design and fabrication of the tank from the design and installation of the other

machinery and equipment for purposes of preventing the statutory bar of Ark. Stat. Ann. § 37-237 (Supp. 1973), *supra.*

Affirmed.

FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. This case was disposed of by the trial court on a demurrer asserting the statute of limitations. I cannot agree that there is no question of fact involved in determining the application of the pertinent statute of limitations in this case when we give appellant the benefit of every reasonable inference that may be drawn in the pleader's favor, as we must. See *McKim* v. *McLiney,* 250 Ark. 423, 465 S.W. 2d 911. Appellant concedes that the issue turns upon the question whether the installed storage tank was "an improvement to real property." This term has not been construed or defined in applying the statute involved here. We have determined in other cases what the term meant, but the meaning may vary, depending upon the relationship of the parties.

For example: In an attachment in a suit on a note, a defendant claimed that the note was given in consideration for a contract for the erection of valuable improvements upon the land upon which the attachment was levied, and for supplies. The alleged improvements were a portable steam engine, mill and cotton gin. The court ordered the steam engine and machinery attached to be sold as personal property under the levy. It had been purchased from the plaintiffs by a partnership of Maddox & Toms, the defendants in the action. The engine furnished the motive power for a gin and even though it was constructed so it could be readily moved from place to place, it had never been moved after it was put upon the property. It rested upon sills, under a rough plank shed which protected it from the weather. It might be moved without substantial damage to it or the freehold. The machinery was not attached to the soil. A shed was erected over the machinery. The question was whether the note was an obligation for the erection of improvements upon real property claimed to be exempt as the homestead of one of the partners, who was a tenant in common with his two sisters.

The court said:

> The remaining question is whether the note, sued on, is an "obligation contracted for the erection of improvements" on the land in question, within the meaning of the third section of the 12th article of the Constitution? The engine, etc., for which the note was in part given, was purchased of appellants, by Maddox & Toms, as partners, and placed on the premises as a motive power to the gin, etc., to be used in their partnership planting business. Maddox had no interest in the land. As between him and Toms, it did not become part of the realty, but remained personalty, and was subject to their partnership debts. Toms was only a tenant in common with his sisters, and they could not have claimed that the portable engine, placed on the land by him and his partner, for purposes connected with their planting business, became part of the realty. If Toms had been the sole owner of the land, and purchased the engine and placed it on the premises for his own purposes, and the controversy had arisen between him and a vendee to whom he had sold the land, there might be a question whether it was not a fixture, and passed with, and as part of the realty. 1 Wash. on R. Prop., top pages, 16, 17.

> Upon the facts of this case, the engine, etc., was surely not an *improvement* erected on the property within the meaning of the clause of the Constitution in question. As held by the court below it was no permanent betterment of the property.

*Greenwood & Son* v. *Maddox & Toms*, 27 Ark. 648.

In *Bemis* v. *First National Bank*, 63 Ark. 625, 40 S.W. 127, the question presented was whether a complete sawmill and planing mill outfit and attached machinery consisting of five boilers, two engines, a sawmill with saw, shafting, pulleys, belting, fixtures, a planing machine, etc. were real property or personal property as between an attaching creditor and the holder of a vendor's lien on the real estate on which the mill was located. All were attached to the buildings on the

grounds in the usual way. In holding that this property was real estate subject to the vendor's lien, this court then said:

****The difficulty, in any case, is in determining whether a piece of property, where movable, and yet attached, is the one or the other species of property; and the general rule has never been changed, but more particularly explained in modern times. Thus, while a building and things fastened for use in it are prima facie real estate, because they answer the general definition of the common law, yet many circumstances are liable to intervene by which the classification of these articles coming under the head of "fixtures" may become personal property. In *Choate* v. *Kimball*, 56 Ark. 55, 19 S.W. 108, this court applied the following rules, taken from the authorities, and generally recognized as proper explanations of the general rule, to wit: (1) "Real or constructive annexation of the article in question to the realty." (2) "Appropriation or adaption to the use or purpose of that part of the realty with which it is connected." (3) "The intention of the party making the annexation to make the article a permanent accession to the freehold; this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, and the policy of the law in relation thereto, the structure and mode of annexation, and the purpose or use for which the annexation has been made." It is unnecessary to discuss the first two definitions, since, for all practical purposes of this case, they are comprehended in the third statement, and of this Ewell, in his work on Fixtures (page 22), says: "Of these three tests the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others [the first and second statements] seem to derive their chief value as evidence of such intention." In the case of *Choate* v. *Kimball*, supra, this court said: "Without making a detailed recital of the facts in this case, it may be stated that the annexation was sufficient to meet the requirements of the first test; but that the articles could be removed without any injury to the freehold, or any material injury to

themselves, and that the articles were appropriate and adapted to the use of the realty with which they were connected, but that they were equally appropriate and adapted to the use of other sawmills. The articles may or may not have been fixtures within the first and second tests, and whether they were or were not must be determined by an application of the third." The same, in substance, may be said of the machinery and necessary appliances of the mills in question, and of any other sawmill; and in making this statement we need not assent to or dissent from the statement that it is material whether the articles are so attached as that they may be detached without injury to the freehold or to themselves, for the mere manner in which the articles are attached may not so much evidence the intention of making the annexation permanent or temporary as an intention to provide the more conveniently for mere possible changes. Applying the third test to the facts in that case, this court held the articles to be personal property, but solely on evidence to the effect, as stated in the opinion, that it was the custom in the locality to regard and treat all such as personal property, and that the mortgage seemed to express a reference to the existence of this custom ***** On the contrary, the evidence shows that this mill site had peculiar adaptation and advantages as such, and had been long in use for that purpose, and that it is the custom to regard sites of this character as permanent, and all the machinery attached to the buildings thereon as a part of the realty. ***** The corresponding language in the deed from Coy to Blinn is: "Now, therefore, be it known that I, L. M. Coy, receiver, in consideration of three thousand seven hundred and fifty dollars, *** do hereby grant, bargain, and sell unto the said Horace Blinn, and unto his heirs and assigns, forever, the following described lands: ***; together with all the mills, machinery, tools, fixtures, appurtenances pertaining to the same. To have and to hold the same unto the said Horace Blinn, and unto his heirs and assigns, forever." This means substantially (according to our view of it) the same as the expression, "and all the improvements thereon," - a phrase of such common use in our Western country to denote whatever

has the character of a physical fixture at the time, and is generally comprehended in the words "appurtenances," "hereditaments," etc., and in this case made to come under the last designation expressly in the habendum clause.

This case involving the question, as the court put it, of improvements on land, is clearly indicative that fact questions as to the intention of the parties do exist and that evidence of custom may be admissible in deciding the question.

In holding that electric light fixtures in a theater constituted an improvement to the land under the mechanics and materialmen's lien statute, this court turned its decision upon the intention of the lessee to make them a permanent part of the building, emphasizing the fact that they were so installed as to be incorporated into the building and became a component part of it, with the intention that they remain until they wore out. Other factors considered were their essentiality to the successful operation of the theater, their having been designed for that use, and their reasonable necessity for the purpose for which they were placed in the building. *O'Neill* v. *Lyric Amusement Co.*, 119 Ark. 454, 178 S.W. 406.

In holding that the trial court correctly decided that a wagon scales apparatus consisting of a platform mounted over a concrete-lined pit, with a rod running into a house through a small hole in the floor became a part of the realty as between the vendor of the real estate and one who claimed under an unrecorded agreement with the vendor authorizing removal of the scales, we called attention to the fact that removal of the scales would leave an unsightly and dangerous hole on the premises and removal of the rod would leave a hole in the floor of the house. The importance of the manner of attachment to the building was emphasized in the opinion. *Waldo Fertilizer Works, Inc.* v. *Dickens*, 206 Ark. 747, 177 S.W. 2d 398.

In *Dent* v. *Bowers*, 166 Ark. 418, 265 S.W. 636, we considered the question whether a filling station, consisting of an underground tank and a gasoline pump attached thereto, on and under the street and sidewalk adjoining a lot on which a

garage building was situated, was a fixture which passed by deed to the purchaser of the lot as against the claim of ownership by a lessee who purchased from a former tenant. The trial court held in favor of the lessee. We reversed, holding that there was a clear preponderance of evidence showing that the filling station was a fixture, giving consideration to its character and use and the resulting presumption, *in the absence of proof*, that the owner had annexed the filling station as a permanent accession to his land.

In *Evans* v. *Argenta Building & Loan Assn.*, 180 Ark. 654, 22 S.W. 2d 377, the litigation was between the mortgagee in a mortgage on a house and lot and the seller of certain plumbing fixtures installed in the house under a contract with the owner by which the seller retained title. We said:

> Here the testimony shows that, under the conditional sale whereby the title was reserved, the company installed certain lines of pipe by which pure water might be furnished and sewerage connections afforded, and there was also put in place in the bathroom a "closet combination, consisting of bowl, tank and seat." The testimony is to the effect that these articles were attached to the floor and walls with screws and might be removed without material damage to the building or the premises, but the testimony also shows that to remove the pipe would leave holes in the floor and walls of the building and would require the excavation of the premises adjacent to the house, as the pipe had been placed in the ground. This latter work would disfigure the building and damage it, as well as the ground adjacent to it, and the right to remove the pipe does not exist. We perceive no reason, however, why the closet combination, consisting of the bowl, tank, and seat, may not be removed as their removal will cause no material damage to the property.

*Greenwood, O'Neill, Dickens, Dent* and *Evans* were considered authoritative in *DePriest* v. *Peikert*, 211 Ark. 460, 200 S.W. 2d 804. The property involved there was a "tourist camp." The lessor sought cancellation of a lease of the property, alleging a breach, and sought to enjoin the lessee

from removing a heating plant and waterworks system. The lessor relied upon a clause in the lease providing that all improvements on the buildings or lands made by lessees should become a part of the realty and remain on the lands. We said:

> In the case at bar the water pipes and gas pipes, as well as the gas tank, have been laid underground, and the pipes have been conducted into the buildings through small holes. To take up the pipes and gas tank would necessitate digging up of soil covering them. The removal of the pipes from the buildings would inevitably inflict some damage on these structures.

> We conclude that, as to the water and gas distribution lines and the gas tank, these articles were so affixed to the real estate as to become "improvements" within the meaning of this word as used in the lease and that appellees therefore do not have the right to remove same.

> A different situation as to the water pump, motor and water tank is shown. This machinery is fastened by bolts to a concrete foundation and may be removed readily and without any damage to the realty. It did not under the circumstances shown become an improvement to a building or to the land as the terms were used in the contract.

In *Bache, Recvr. v. Central Coal & Coke Co.*, 127 Ark. 397, 192 S.W. 225, we held that the question whether a tipple for removal of coal from a mine was a removable trade fixture or a part of the realty was for the jury. There was testimony that the tipple was an essential part of the machinery in the mine and connected with it, that essential machinery was supported by the tipple, and that this machinery and tipple constituted one connected unit necessary in the operation of the coal mine. There was also evidence that the tipple was so erected that it could be taken down and rebuilt.

Not too long ago, we held that light fixtures, carpeting, heating and air-conditioning equipment and display cases installed by a tenant for his own use and benefit could be

removed by him, even though the removal left a bare exposed wall in the same condition he found it, emphasizing the fact that the tenant did not install these "trade fixtures" to enrich the freehold, the great latitude and indulgence accorded by the courts to a tenant's claims in that regard, and the great significance of the test of removability based upon the intention of the party making the annexation and his situation and relation to the owner of the soil. *Sparkman* v. *Etter*, 249 Ark. 93, 458 S.W. 2d 129. See also, *Arkansas Cold Storage & Ice Co.* v. *Fulbright*, 171 Ark. 552, 285 S.W. 12. The importance of the intention of the improvement was emphasized in *Romich* v. *Kempner Bros..Realty Co.*, 192 Ark. 454, 92 S.W. 2d 215 and *W. B. Thompson & Co.* v. *Lewis*, 120 Ark. 252, 179 S.W. 343. It is notable that it is recognized that the manner of attachment and the removability of machinery are circumstances to be considered in arriving at the intention of the parties.

Among other cases holding or recognizing that there was a question of fact are: *British & American Mortgage Co.* v. *Scott*, 70 Ark. 230, 65 S.W. 936; *Kearbey* v. *Douglas*, 215 Ark. 523, 221 S.W. 2d 426; *Hoing* v. *River Valley Gas Co.*, 196 Ark. 1165, 121 S.W. 513.

I do not consider *Alwes* v. *Richheimer*, 185 Ark. 535, 47 S.W. 2d 1084, the case cited in the majority opinion, to be contrary to my position or the cases herein cited or to mandate the affirmance of the sustaining of the demurrer in this case. The concluding paragraphs in that case read:

Applying these principles, we think the articles enumerated above are fixtures because,not only are they attached to the building, but are used and are useful in connection with the operation of the building as a theater or moving picture show, the only purpose to which it is adapted.

We therefore agree with the trial court that said articles after being placed in the theater building and attached thereto became fixtures, lost their identity as chattels, and passed under the first and second mortgages without special enumeration, and were subject to foreclosure and sale as a part of the realty.

The bar of a statute of limitations cannot be raised on demurrer unless the complaint affirmatively shows upon its face not only that sufficient time has elapsed to bar the action, but that there are no facts or grounds that would avoid or take the case out of the operation of the statute. *Gibson* v. *Gibson*, 244 Ark. 327, 424 S.W. 2d 871; *State, Use Glover* v. *McIlroy*, 196 Ark. 63, 116 S.W. 2d 601; *Rogers* v. *Ogburn*, 116 Ark. 233, 172 S.W. 867; *Hutchinson* v. *Hutchinson*, 34 Ark. 164.

Since the allegations relating to the manner of attachment and the purposes and use of the storage tank do not conclude the matter or foreclose an inquiry into the basic facts in that regard and the intention of the parties shown by the circumstances, I would reverse the judgment.

I am authorized to state that Mr. Justice Jones joins in this dissent.