**URICAM CORPORATION, N.V., a Netherlands Antilles corporation, Plaintiff,**

v.

**W.R. GRACE & CO., and W.R. Grace & Co.-Conn., Defendants.**

**No. CIV-89-2217-P.**

United States District Court,
W.D. Oklahoma.

June 11, 1990.

David M. (Mike) Thornton, Jr., Thornton & Thornton, Tulsa, Okl., for plaintiff.

Roger Graham, Valerie Couch & J. William Conger, Hartzog, Conger, Cason & Hargis, Oklahoma City, Okl., for defendants.

ORDER

PHILLIPS, District Judge.

Before the Court is defendants' motion to dismiss plaintiff's complaint.[1] Defendants filed their motion February 13, 1990. Plaintiff filed its response brief on April 10, 1990 and filed a supplemental response brief on May 7, 1990. Defendants filed a reply brief on May 3, 1990 and filed a supplemental reply brief on May 29, 1990. The issues are fully briefed and defendants' motion is ripe for determination.

I. *Standard for Motion to Dismiss*

It is well established that a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976). In the context of a motion to dismiss, the Court must construe the challenged pleadings in the light most favorable to the plaintiff, must accept as true all well-pleaded factual allegations and reasonable inferences therefrom, and can disregard all conclusionary allegations. *Id.* at 386; *see generally Gilbreadth v. Phillips Petroleum Co.*, 526 F.Supp. 657, 659 (W.D. Okla.1980) (motions to strike are not favored by the courts). Leave to amend pleadings shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). Moreover, appellate courts urge caution regarding motions to dismiss, and our Circuit has expressed a strong predisposition by the judicial system to resolve cases on their merits. *E.g., Hancock v. City of Okla. City*, 857 F.2d 1394, 1395–96 (10th Cir. 1988); *Meade v. Grubbs*, 841 F.2d 1512, 1520–21 n. 7 (10th Cir.1988).

II. *Introduction*

This action involves the sale of a product containing asbestos. Plaintiff seeks dam-

---

1. Subsequent to the filing of defendants' motion to dismiss, plaintiff filed a dismissal without prejudice of Counts 6, 7 and 8 of its complaint. *See* Dismissal Without Prejudice (Apr. 10, 1990).

ages and other relief in connection with defendants' 1972 sale of Mono–Kote, a fireproofing substance which contains asbestos. Plaintiff alleges that Mono–Kote was applied (but not by defendants) to plaintiff's office building located in Oklahoma City, Oklahoma. Plaintiff alleges the building and its furnishings and fixtures are now contaminated, and that defendants are liable to plaintiff for such contamination under a variety of legal theories. Defendants contend that plaintiff's complaint is barred by Oklahoma's ten-year statute of repose found at 12 Okla.Stat. § 109. The statute provides:

> Limitation of action to recover damages arising from design, planning or construction of improvement to real property
>
> No action in tort to recover damages
>
> (i) for any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
>
> (ii) for injury to property, real or personal, arising out of any such deficiency, or
>
> (iii) for injury to the person or for wrongful death arising out of any such deficiency,
>
> shall be brought against any person owning, leasing, or in possession of such an improvement or performing or furnishing the design, planning, supervision or observation of construction or construction of such an improvement more than ten (10) years after substantial completion of such an improvement.

12 Okla.Stat. § 109.

III. *Discussion*

The issue presented by defendants' motion is whether Oklahoma's statute of re-

pose is broad enough to protect manufacturers of products used in the construction of improvements to real property. The Oklahoma Supreme Court has expressly not resolved this issue.[2] Accordingly, this Court must predict how the Oklahoma Supreme Court would rule. *Weiss v. United States*, 787 F.2d 518, 525 (10th Cir.1986). In predicting Oklahoma law the Court "must follow intermediate state court decisions, policies underlying the applicable legal principles, and doctrinal trends indicated by those policies." *Id.* The Court may also utilize other reliable sources including treatises, restatements, law review articles, and the rule in other states looked to by Oklahoma courts. *Nicolson v. Life Ins. Co. of Southwest*, 783 F.2d 1316, 1319 (5th Cir.1986).

The statute of repose was initially enacted by the Oklahoma Legislature in 1967.[3] Thereafter, in *Loyal Order of Moose, Lodge 1785 v. Cavaness*, 563 P.2d 143 (Okla.1977), the Oklahoma Supreme Court declared the statute unconstitutional as violative of the equal protection clause of the fourteenth amendment to the United States Constitution, because there was no rational basis for distinguishing between the class of engineers/architects (who were protected by the statute) and the class of owners/tenants (who were not protected). The *Loyal Order* decision also seemingly construed the 1967 version of the statute to be broad enough to protect manufacturers of products used in the construction of improvements to real property. The decision reads, in pertinent part:

> The statute probably was intended to limit the liability of the narrow class consisting of architects and engineers etc. In its enacted form it must be read

---

**2.** In 1987 the Oklahoma Supreme Court, in a case construing Section 109, stated: "... nor need we settle the issue whether § 109 is applicable to manufacturers...." *Smith v. Westinghouse Electric Corp.,* 732 P.2d 466, 467 n. 3 (Okla.1987). In 1989 the Oklahoma Supreme Court again had before it Section 109, and again stated: "we need not construe the language which creates the defendants' classification in order to determine whether manufacturers fall

within its parameters.... since the class obviously includes both the architects and contractors before us." *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.,* 782 P.2d 915, 922 n. 6 (Okla. 1989).

**3.** The 1967 version of Section 109 did not include owners and tenants within the class of persons protected by the statute of repose.

to be much broader and include material-men, manufacturers or anyone involved in providing material or service in the construction. *Loyal Order*, 563 P.2d at 147. Defendants rely on this language as support for their contention that they are protected by the statute of repose.

If *Loyal Order* were the most recent pronouncement on the subject from the Oklahoma Supreme Court, this Court would be inclined to agree with defendants. However, such is not the case.

Shortly after the pronouncement by the Oklahoma Supreme Court in *Loyal Order*, the Oklahoma Legislature amended Section 109. The 1978 amendment added owners and tenants to the class of persons protected by the statute, and changed the period from five years to ten years. 1978 Okla. Sess. Laws, c. 188 § 1. The 1978 version of the statute has been considered by the Oklahoma Supreme Court twice.

First, in *Smith v. Westinghouse Elec. Corp.*, 732 P.2d 466, 467 (Okla.1987), the court addressed the issue "whether an electrical transformer, the harm-dealing instrumentality in suit, constitutes an 'improvement to real property' within the meaning of § 109." The appellants had also challenged the constitutionality of Section 109 on various grounds. The court held:

> Assuming that § 109 is constitutional and available for invocation by a transformer's manufacturer, [footnote omitted] we hold that, because an electrical transformer retains at all times its character as the personalty of the public utility supplying the electrical power, it is not an "improvement to real property" within the meaning and contemplation of § 109.

*Id.* at 467–468. Of particular significance to the motion before this Court is the footnote to the above-quoted holding. Without referencing *Loyal Order* in any manner, the Oklahoma Supreme Court stated in the footnote: "Since we announce today that the transformers here in contest are not 'improvements to real property,' we need not pause to consider any constitutional attacks made on § 109; *nor need we settle*

*the issue whether § 109 is applicable to manufacturers....*" *Id.* at 467 n. 3. (emphasis added).

Second, in *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.*, 782 P.2d 915, 916 (Okla.1989), the court addressed "the constitutionality of 12 O.S. § 109." In a thorough and well-reasoned decision, the court held: "The statute before us satisfies all state constitutional standards applicable to the facts and parties before us." *Id.* at 923. In *St. Paul*, the court made numerous references to its earlier decision in *Loyal Order*. However, of particular significance to the motion before this Court, the Oklahoma Supreme Court again clearly expressed that the issue whether manufacturers are protected by Section 109 has not be resolved. *Id.* at 922 n. 6 ("We need not construe the language which creates the defendants' classification in order to determine whether manufacturers fall within its parameters (as St. Paul urges), since the class obviously includes both the architects and contractors before us.").

In light of *Smith* and *St. Paul*, this Court cannot say that *Loyal Order* held manufacturers are protected by the 1978 version of Section 109. Defendants' reliance on *Loyal Order* for that proposition is misplaced. The *Loyal Order* court construed the 1967 statute. That statute was declared unconstitutional and thereby became "wholly void, and in legal contemplation ... as inoperative as if it had never been passed." *St. Paul*, 782 P.2d at 917. The statute at issue in *Smith* and in *St. Paul* was the new statute which the Legislature enacted in 1978 in response to the *Loyal Order* decision. *Id.*

The *St. Paul* decision, while not determinative, is helpful to this Court in deciding the issue presented by defendants' motion. In *St. Paul* the court expressly recognized "the abundant authority from sister jurisdictions as well as the existing commentaries on similar legislation." *St. Paul*, 782 P.2d at 918. The court listed over forty decisions from other jurisdictions in an appendix. *Id.* at 923–24 ("App. A"). The Court has carefully reviewed those authorities as well as the authorities cited by the

parties in this case, and believes the majority and clear trend is to construe similar legislation in such a way that manufacturers in the position of defendants in this case are not protected by the statute of repose.

Further, the Court notes that in *St. Paul* the Oklahoma Supreme Court found the Legislature's enactment of Section 109 was motivated by its desire to "limit the impact of recent changes in the law which otherwise allowed these *professions* [architectural and engineering] to incur liability long after the completion of the improvement." *St. Paul*, 782 P.2d at 920 (emphasis added). The Oklahoma Supreme Court also found Section 109 "is rationally related to the legitimate government objectives of providing a measure of security for *building professionals* whose liability could otherwise extend indefinitely." *Id.* at 921 (emphasis added). This Court is persuaded that these findings strongly indicate the Oklahoma Supreme Court would not extend Section 109 protection to product manufacturers, that is non-building professionals.

IV. *Conclusion*

For the reasons set forth above, this Court believes the Oklahoma Supreme Court would, if presented with the issue, find that Oklahoma's statute of repose, 12 Okla.Stat. § 109, does not protect product manufacturers who are in the position of the defendants here.

Accordingly, defendants' motion to dismiss, filed February 13, 1990, is DENIED.

IT IS SO ORDERED.