Dennis BROWN, Sr., individually and as Father and Next Friend of Dennis Brown, Jr., a Minor Child, Plaintiffs,

v.

OVERHEAD DOOR CORPORATION, Defendant.

Civ. No. 93–5210.

United States District Court, W.D. Arkansas. Fayetteville Division.

Jan. 21, 1994.

Richard L. Gossett, Michael D. Parks, Eddie Harper, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, McAlester, OK, Woody Bassett, Fayetteville, AR, Shawn M. Bartsh, St. Paul, MN, Joe Dean Adair, Stilwell, OK, Harry Scoufos, Sallisaw, OK, Todd Hembree, Hembree & Hembree, Stilwell, OK, for plaintiffs.

Steven J. Adams, Stephen R. Ward, Tulsa, OK, Betty Outhier Williams, Julian K. Fite, Edwin L. Gage, Douglas S. Pewitt, Robinson, Locke, Gage, Fite & Williams, Muskogee, OK, for defendant.

### *MEMORANDUM OPINION*

H. FRANKLIN WATERS, Chief Judge.

This products liability action was filed in the Eastern District of Oklahoma on June 17, 1993. The court's jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. The complaint alleges that on June 1, 1992, Dennis Brown, Jr., then two years old, was trapped under a garage door at a residence located in Washington County, Arkansas. The garage door in question was operated by an automatic garage door opener manufactured by the defendant. The opener was installed on April 27, 1982, during or near the completion of the construction of the home.

The opener was installed by the Overhead Door Company of Fort Smith, Arkansas, an independent dealer/distributor who sells products manufactured by Overhead Door Corporation. Plaintiff contends the opener safety device designed to reverse the door if it met with an obstruction such as a child while closing malfunctioned causing it to descend upon Dennis Brown, Jr., with sufficient force to trap him underneath the door. Dennis Brown, Jr., sustained severe personal injuries as a result of the incident and is now cared for in an institutional setting.

Plaintiffs originally asserted four causes of action. However, by order of the court entered on October 21, 1993, two of the causes of action brought under Oklahoma law were dismissed. The remaining claims are for

negligence and strict liability in connection with the design, manufacture, and sale of the opener. Plaintiffs also assert a claim for punitive damages. In the October 21, 1993, order the court also ruled that the substantive law of Arkansas would apply to the action because Arkansas was the state with the most significant relationship to the claims asserted. On December 22, 1993, an order was entered allowing the defendant to amend its answer to assert a statute of limitations or statute of repose defense to the plaintiffs' claims.

This action was transferred to this court by order entered on December 22, 1993. In the order of transfer the court again determined under the applicable choice-of-law rules that Arkansas substantive law should be applied to the case. As Ark.Code Ann. § 16–56–112(b)(1) is a substantive statute, the court concluded it would be applied to the claims at issue. In so ruling, the court cited *Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1223 (10th Cir.1991) for the proposition that products liability statutes of repose are substantive and should be applied as the substantive law of the state selected under the relevant choice-of-law analysis. The court, noting that there was no Arkansas law on whether this statute would apply to manufacturers such as the defendant, found it appropriate to transfer the action to this court.

■■■ This court received the file on December 29, 1993. The case is currently before the court on the defendant's motions for summary judgment. Both motions for summary judgment seek entry of judgment as a matter of law on the basis of Ark.Code Ann. § 16–56–112(b)(1). The motions are virtually identical. One motion requests entry of judgment as a matter of law on the affirmative defense that the statute bars plaintiffs' claims. The second motion argues that because of the statute the complaint fails to state a claim upon which relief can be granted. For reasons that will become apparent, defendant refers to the Arkansas statute as

one of repose as opposed to a statute of limitations.[1]

In opposing the summary judgment motions plaintiffs argue that the Arkansas statute is one of limitation and not repose and that Oklahoma conflict-of-law rules and Oklahoma's borrowing statute dictate application of the Oklahoma statute of repose. The court notes that both summary judgment motions, the plaintiffs' joint response thereto, and the defendant's reply were filed with the Eastern District of Oklahoma prior to the entry of the order of transfer and the court's ruling therein that Ark.Code Ann. 16–56–112 was substantive and that a determination must be made whether it barred the claims asserted herein.

■■■ The transferee court is to apply the law of the transferor court including the applicable choice-of-law or conflict-of-laws rules. *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Ordinarily a transferee court will not overturn decisions of a transferor court in the absence of proper circumstances. The Court of Appeals for the Eighth Circuit has indicated that the power of a transferee court to overturn the orders of a transferor court are not unlimited. *See In re Exterior Siding & Aluminum Coil*, 696 F.2d 613 (8th Cir.1982). Specifically, the court found such a limitation to exist in the doctrine of the law of the case. The court noted:

Although a judge may not be bound by the rulings of his predecessor, he also is not free to ignore them. This is the doctrine of "the law of the case", which holds that a judge ordinarily should not overrule the decisions of a prior judge in the same case without good cause. We have observed previously that the law of the case doctrine is a rule of practice rather than a command to courts. However, the doctrine "is something more than mere courtesy, which implies only deference to the opinion of others, since it has substantial value in secur-

1. A statute of limitations cuts off a vested substantive right by penalizing a party who rests on its rights. A statute of repose sets an outer boundary in time beyond which no cause of action may arise for conduct that would have otherwise been actionable. *Jaworsky v. Frolich*, 850 P.2d 1052 (Okla.1992) (citations omitted).

ing uniformity of decision, and discouraging repeated litigation of the same question."

*Id.* at 616 (citations omitted). We conclude that the December 22, 1993, ruling is the law of the case. We therefore proceed to a determination of whether the statute at issue bars the plaintiffs' claims.

■ Ark.Code Ann. § 16–56–112 (1987) provides in relevant part as follows:

**16–56–112. Design, planning, supervision, or observation of construction, repair, etc.—Actions for property damage, personal injury, or wrongful death.**

(b)(1) No action in tort or contract, whether oral or written, sealed or unsealed, to recover damages for personal injury or wrongful death caused by any deficiency in the design, planning, supervision, or observation of construction or the construction and repairing of any improvement to real property shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or the construction and repair of the improvement more than four (4) years after substantial completion of the improvement.

(d) The limitations prescribed by this section shall not apply in the event of fraudulent concealment of the deficiency, nor shall the limitation be asserted by way of defense by any person in actual possession or control, as owner, tenant, or otherwise, of such an improvement at the time any deficiency in the improvement constitutes the proximate cause of the injury or death.

(f) Nothing in this section shall be construed as extending the period prescribed by the laws of the state for the bringing of any cause of action, nor shall the parties to any contract for construction extend the above prescribed limitations by agreement or otherwise.

It is defendant's contention that the automatic garage door opener was installed as an improvement to real property more than ten years before the minor plaintiff was injured.[2] Defendant therefore contends that this action is barred.

Defendant takes the position that the garage door opener is an improvement to real property because it was (1) continuously installed and in use during the time between the installation and the accident, (2) affixed to the home, and (3) transferred with the home in subsequent sales. Defendant argues that the statute in question is a statute of repose rather than a statute of limitation. As such defendant contends the statute bars the accrual of the cause of action.

Defendant relying on *Cherokee Carpet Mills, Inc. v. Manly Jail Works*, 257 Ark. 1041, 521 S.W.2d 528 (1975) and *Carter v. Hartestein*, 248 Ark. 1172, 455 S.W.2d 918 (1970) contends that the Arkansas Supreme Court has held that the statute protects manufacturers who supply products to be installed as improvements.[3] Defendant also cites the court to *Ablin v. Morton Southwest Co.*, 802 S.W.2d 788 (Tex.App.1990) in which the court held for the purposes of a similar statute that an automatic garage door opener was an improvement to real property.

Plaintiffs vigorously oppose the motion contending that (1) the defendant is a manufacturer of a product who had nothing to do with the construction of the home or the installation of the product in the home; (2) the opener is not an improvement to real property but rather is a temporary component and attachment to an improvement real property; and (3) the opener is a mass produced fungible product.

The Arkansas courts have addressed this statute and its predecessor in a number of different situations. In *Carter v. Hartenstein*, 248 Ark. 1172, 455 S.W.2d 918 (1970) the Supreme Court of Arkansas was asked to determine the constitutionality of Ark.Stat.

---

**2.** Oklahoma has a statute of repose, 12 O.S. § 109, that is similar to the Arkansas statute except that it has a limitation period of ten years after substantial completion of an improvement to real property.

**3.** The court requests that counsel provide parallel cites on all citations to Arkansas case law. The court recognizes that this is not proper "blue book form" but the court's library contains only the official Arkansas Reports and does not contain the Southwest Reporter.

Ann. § 37–238, the predecessor to the current statute. A 14 year old boy had been crushed to death while attempting to use an elevator installed in the Justice Building in Little Rock. Suit had been brought against the manufacturer and installer of the elevator, the architect, and the contractor of the building. The trial court granted summary judgment in favor of all defendants on the basis that the cause of action was barred by § 37–238. The sole issue on appeal was the constitutionality of the act. *Id.* 248 Ark. at 1174, 455 S.W.2d 918. The appellants argued that the statute violated due process, was discriminatory, contravened equal protection of the laws, and was local and special legislation. The Arkansas Supreme Court rejected these constitutional challenges.

In so doing, the court noted that the statute of limitations cut off an action after four years against those furnishing the design, planning, supervision or observation of construction, or the construction and repairing of any improvement to real property. The court stated:

> [a]ll of the defendants in this action are within this definition. However, it does not include owners of the buildings or materialmen who are not otherwise involved. Such materialmen and the owners of buildings or structures who are in sole control of premises after completion of the work are *not* similarly situated with the defendants in this case. They are not in the same class with those described in the act.

*Id.* 248 Ark. at 1175, 455 S.W.2d 918. It was further noted that "[a] materialman who designs a component or substantial part of a building could be otherwise involved and within the statute." *Id.* In rejecting the reasoning of an Illinois court that had found a similar statute to be discriminatory against others similarly situated the court noted that "a vital distinction, nonetheless, exists between owners or suppliers and those engaged in the professions and occupations of design and building." *Id.* 248 Ark. at 1176, 455 S.W.2d 918.

In *Okla Homer Smith Furniture Mfg., Co. v. Larson & Wear, Inc.,* 278 Ark. 467, 646 S.W.2d 696 (1983) the court discussed the legislative history of this act noting "it is obvious that the legislative purpose was to enact a comprehensive statute of limitations protecting persons engaged in the construction industry from being subject to litigation arising from the work performed many years prior to the initiation of the lawsuit." *Id.* 278 Ark. at 470, 646 S.W.2d 696.

*Cherokee Carpet Mills v. Manly Jail Works,* 257 Ark. 1041, 521 S.W.2d 528 (1975) involved the design and construction of a 12,122 gallon water tank for use in a carpet mill. The trial court found the action barred by the statute of limitations and the supreme court affirmed holding that the tank was an improvement to real property. The tank in question was placed into position and interconnected with other parts of machinery and equipment.

In *East Poinsett County School District No. 14 v. Union Standard Ins. Co.,* 304 Ark. 32, 800 S.W.2d 415 (1990) the court was given its first opportunity to address § 16–56–112 and its effect, if any, on other statutes of limitation. The litigation involved damage to the school's gymnasium roof. The school had been insured by Union Standard Insurance Company. The school contended that Union had entered into an oral contract with Percy Mart, Inc. to repair the roof. The repairs were completed in May of 1984 and the roof began to leak shortly thereafter. Percy Mart made several attempts to fix the problem but was unsuccessful. Nearly five years later, in May of 1989, the school filed suit contending it was the third party beneficiary of the oral contract between Union and Percy Mart and that Percy Mart had breached the agreement by not performing the work as warranted. The trial court dismissed the action finding it was barred by the three year statute of limitations for breach of oral contracts, Ark.Code Ann. § 16–56–105(3).

On appeal, the school argued that the correct statute of limitations was Ark.Code Ann. § 16–56–112(a) which provides that no action in contract may be brought against any person performing the construction or repair of an improvement more than five years after substantial completion of the improvement. The court discussed the reason for the enactment of § 16–56–112 noting:

Before the enactment of § 16–56–112, a third party could sue architects and people in the construction and building field at any time after completion of work, so long as the third party brought suit within the applicable statue (sic) of limitations period commencing from when an injury or breach occurred. In recognition of this fact, states, including Arkansas, adopted statues (sic) to limit the time within which actions could be brought against persons in the construction and building field.

*Id.* 304 Ark. at 33–34, 800 S.W.2d 415.

The school argued for application of the established rule of law that if two statutes of limitations apply to the same cause of action the longest limitations should be applied. The court rejected the general rule noting that subsection (f) of the statute expressly provides that § 16–56–112 was not meant to extend existing statutes of limitations. The court concluded that § 16–56–112 could not be used to extend the three year limitations period provided in § 16–56–105(3). The court stated:

> As it relates to the facts in the present case, § 16–56–112(a) clearly establishes a maximum five year period within which an injured party can bring suit against a person who deficiently constructs or repairs an improvement to real property. That period commences after the substantial completion of the improvement. But, in bringing such a suit, the injured party must still bring the action within the statute of limitations for that type of cause of action.

*Id.* 304 Ark. at 34, 800 S.W.2d 415.

While the Arkansas courts have addressed the applicability of this statute on a number of occasions, we do not believe that the Arkansas courts have ruled on the specific issue before us. None of the cases address whether a manufacturer of a mass produced good comes within the class of persons protected by the statute; nor do the cases indicate whether a product such as a garage door opener is regarded as an improvement to real property.

To aid us in making this determination we turn to an examination of case law from other jurisdictions interpreting similar stat-utes. In *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1645, 123 L.Ed.2d 267 (1993), the court applying a similar Pennsylvania statute noted that for the statute to apply the defendant must show (1) that the statutory number of years had lapsed since the construction, (2) that the construction is an improvement to real property, and (3) that he falls within the class of persons the statute protects. *Id.* at 114. In the case before this court it is uncontested that the installation of the garage door opener and the substantial completion of the construction of the home occurred more than four years prior to the institution of this suit.

A number of different products have been held to constitute improvements to real property when installed or otherwise placed on the property. *See e.g., Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107 (3d Cir.1992) (Pennsylvania law—above ground pool that had an elaborate three-tiered deck surrounding it constituted an improvement); *Dedmon v. Stewart–Warner Corp.,* 950 F.2d 244 (5th Cir.1992) (Texas law—home furnace); *Adair v. Koppers Co., Inc.,* 541 F.Supp. 1120 (N.D.Ohio 1982) (coal-handling conveyer was an improvement), *aff'd,* 741 F.2d 111 (6th Cir.1984). Furthermore, it has been held that a garage door opener constitutes an improvement to real property within the meaning of similar statutes of repose.

For instance, in *Ablin v. Morton Southwest Company,* 802 S.W.2d 788 (Tex.App. 1990) the court held that a garage door opener "is similar to a fixture such as a garbage disposal unit. It is easily removable, but when it is attached to the sink and intended to remain permanently as a part of the building, it is a fixture, and consequently, an improvement to realty." Texas law defines the term improvement to have broader significance than the term fixture and includes all additions and betterments to the freehold. "The term includes everything that permanently enhances the value of the premises." *Id.* at 790. The evidence in the *Ablin* case indicated the garage door opener was installed in the home at the time the home was constructed, had remained there for more than ten years without removal or alteration,

and was conveyed with the property. Although, the *Ablin* court did not discuss whether the defendants fell within the class of people protected by the statute, it is clear from the case that the defendants in the *Ablin* case were both involved in the actual construction of the home or the installation of the opener.

The court in *Henry v. Raynor Mfg., Co.,* 753 F.Supp. 278 (D.Minn.1990) also held a garage door opener to be an improvement to real property within the meaning of a similar statute of repose. The court was applying Minnesota law which defined an improvement to real property as " '[a] permanent addition to or betterment to real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.' " *Id.* at 281 (citation omitted). The court noted:

> The garage door opener was a permanent addition to the Henry's home; was permanently affixed to the home. In addition, the garage door opener was installed through the expenditure of labor and money and was designed to make the house and property more useful and enhance the property's value.

*Id.*

The court refused to apply retroactively a recent amendment to the statute which specified that the limitations provision did not apply to the manufacturer or supplier of any equipment or machinery installed upon real property and specifically excluded garage door openers from coverage by providing they were not improvements to real property. *Id.* at 281–82. The amendment was designed to "change the statute's arguably unjust results in products liability actions" in that it sometimes created a shorter statute of limitations for products liability actions. *Id.* at 282.

The Arkansas statute does not define improvement. The Arkansas courts do not appear to have adopted a uniform set of factors or standards to be utilized in determining whether a given structure or component part is an improvement. The court has considered more than just the structure's or component's mode of attachment. *See e.g., Cherokee Carpet Mills v. Manly Jail Works,* 257 Ark. 1041, 521 S.W.2d 528 (1975). The term appears to be broader than the common law of fixtures. For instance, in another context the court in *Williams v. Jones,* 239 Ark. 1032, 1034, 396 S.W.2d 286 (1965), used the terms improvement and betterment interchangeably, noting that the measure of the value of a betterment or improvement is the enhanced value they impart to the land. Other courts have clearly held that an object need not be a fixture to be an improvement. *Luzadder v. Despatch Oven Co.,* 651 F.Supp. 239 (W.D.Pa.1986), *aff'd in part,* 834 F.2d 355 (3d Cir.1987); *Smith v. Fluor Corp.,* 514 So.2d 1227 (Miss.1987).

However, we believe it unnecessary to definitely decide whether an automatic garage door opener is an improvement to real property within the meaning of the Arkansas statute. The issues of whether a given defendant is a protected actor and whether the activity involves an improvement to real property are intertwined. *See e.g., Dighton v. Federal Pacific Electric Co.,* 399 Mass. 687, 506 N.E.2d 509 (1987), *cert. denied,* 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987). In *Dighton* the court stated that the fact that a producer's product may be usable by persons involved in protected acts tells us nothing about whether the producer's activity is protected, even though the product may fit within the broad definition of improvement. The court was trying to determine whether the manufacturer of a circuit breaker panel was a protected actor and whether the circuit panel was an improvement to real property. The court noted:

> "[t]o be sure, the goods sold were usable in what became an improvement to real property, i.e., construction of the building, but the activity of designing, producing, and making those goods was no more involved in the protected activity of improving real property than would be Sert Jackson's activity of designing hammers, should the latter undertake to do so. Thus, we conclude that the Legislature intended tort actions arising from such activity to be governed by provisions of the Uniform Commercial Code."

*Dighton,* 399 Mass. at 698, 506 N.E.2d at 516. *See also Howell v. Burk,* 90 N.M. 688, 568 P.2d 214 (Ct.App.1977) (statutory language requires analysis of the given defendant's activities), *cert. denied,* 91 N.M. 3, 569 P.2d 413 (1977).

In connection with ruling on whether a given actor falls within the class of persons a similar statute protected, the court in *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107 (3d Cir.1992) (applying Pennsylvania law) noted "[t]he statute identifies its class not by the status or occupation of its members, but rather immunizes from liability 'any' person lawfully performing or furnishing the activities listed in the statute." *Id.* at 115 (citations omitted). The correct inquiry was whether the defendant "furnished or performed any of the listed activities in the statute." *Id.* at 115. It was said to be irrelevant whether the defendant was actually involved in the installation of the product. In particular the *Fleck* court held that the manufacturer of an above-ground pool that had arranged for the construction of the pool fell within the scope of the statute.

In an earlier case the Third Circuit had ruled that the Pennsylvania statute excluded manufacturers from the protection of the statute of repose. In so holding the court noted:

[I]t is evident that manufacturers are not covered under the plain meaning of the statute.... We believe that manufacturers have, for good reason, been excluded from the protection of Pennsylvania's statute of repose. Application of § 5536 to manufacturers would cut the heart out of Pennsylvania's product liability law, by immunizing any manufacturing company fortunate enough to have its product turned into an improvement to real property....

To expand the scope of the repose statute to cover manufacturers would also work to draw an artificial distinction between manufacturers of different products, creating a situation where the maker of a furnace would be protected by the provisions of § 5536, while the maker of an automobile

would not be. No policy or reason can be cited to justify such incongruity.

*Id.* at 359–60.

A federal district court in Oklahoma has construed Oklahoma's statute to exclude coverage for manufacturers. *See Uricam Corp. v. W.R. Grace & Co.,* 739 F.Supp. 1493 (W.D.Okla.1990). In so holding the court stated it believed "the majority and clear trend is to construe similar legislation in such a way that manufacturers in the position of defendants in this case are not protected by the statute of repose." *Id.* at 1496. The protection was not extended to non-building professionals. *Id.*

On the other hand, in *Dedmon v. Stewart–Warner Corp.,* 950 F.2d 244 (5th Cir.1992) the court in applying Texas law noted that, while the original purpose of the repose legislation was probably to protect construction industry professionals, the statute's broad terms cover any person who constructs or repairs an improvement and permit extending protection beyond those professions. *Id.* at 246. The "Texas courts have interpreted the statute to cover some manufacturers of improvements to real property so long as the manufacturing process amounts to the construction of the improvement." *Id.* at 246.

The court noted Texas cases appeared to draw a distinction between an improvement and a component part of an improvement. The statute applies to off-site manufacturers "but only if the manufacturer constructs the entire improvement and not a component part of it." *Id.* at 248. The court noted that the Texas courts have defined the perimeters of the statute's application "primarily by inspecting the terms that describe what *products,* rather than what *actors,* merit protection." *Id.* at 246.

The Fifth Circuit was constrained to follow Texas law but noted:

If we look for the correct analysis in the legislative intent of protecting architects, engineers, and contractors, we might be inclined to draw a boundary that includes only those persons who supply "individual expertise not susceptible of the quality control standards of the factory" and excludes manufacturers or suppliers of stan-

dardized goods such as circuit breakers, garage door openers, and mass-produced heating units.

*Id.* at 250.

In *Dayton Indep. School Dist. v. U.S. Mineral Prod.*, 800 F.Supp. 1430 (E.D.Tex. 1992) the court, without citing *Dedmon,* extensively reviewed Texas case law concerning the statute of repose noting that they were faced with a dilemma "as a result of the Texas courts failure to consistently employ the terms 'construction' when dealing with specially designed or constructed improvements for particular buildings, and 'manufacture' when dealing with standardized, mass-produced and supplied products...." *Id.* at 1437. The Texas statute "is predicated on the type of service provided rather than the Defendants' connection to the improvement." *Id.* at 1438.

The *Dayton* court was asked to decide whether manufacturers of asbestos products, ceiling plaster and fireproofing materials, used in a school building were protected by the statute of repose. The court noted:

> The product formulation does not vary from job-to-job. Rather, it is a standardized, off-the-shelf, mass-produced product, manufactured in a controlled environment with ample opportunity for quality control and pretesting. Defendants are not within the class on construction professionals sought to be protected....

*Id.* at 1439. *But see Marshall Indep. School Dist. v. U.S. Gypsum Co.*, 790 F.Supp. 1291 (E.D.Tex.1992) (following *Dedmon*—focus should be on the product and whether it constitutes an improvement).

The Court of Appeals of Texas recently has approved and agreed with the reasoning and decision of the *Dayton* court holding that the statute extended protection only to constructors and repairers of improvements to real property, not to manufacturers of products who do not install them on the realty. The court noted:

> Whether a defendant manufactures all or only a component part of a product is immaterial in determining coverage. Rather, the crucial inquiry under the definition of materialman is whether the man-

ufacturer actually installed the product on the realty—i.e., whether the manufacturer actually constructs an improvement to realty as the statute requires. We consider *Ablin,* 802 S.W.2d 788, which granted repose to the manufacturer of an automatic garage door opener *who installed it,* to be consistent with legislative intent....

*Williams v. United States Natural Resources,* 865 S.W.2d 203, 209 (Tex.App.1993) (emphasis added).

We cannot say that *Carter* and *Cherokee* compel the conclusion that manufacturers of mass produced goods fall within the scope of the statute. Both are distinguishable on their facts. In *Carter* the elevator had been manufactured and installed by the same defendant. In *Cherokee* it appears that the water tank had been specifically designed and fabricated for installation at the carpet mill.

We believe that the Arkansas courts when called upon to do so will hold that the manufacturers of mass produced fungible goods do not fall within the protection of the statute, particularly when the defendant manufacturer is not involved in the installation of the product and had nothing to do with the design of the improvement within which it is installed. *See e.g., Howell v. Burk,* 90 N.M. 688, 568 P.2d 214 (Ct.App.1977) (to extent defendant sued as a manufacturer and seller of glass, defendant is not covered by the statute—to extent the defendant is sued as a designer or installer of glass, defendant covered by the statute).

In this case the defendant does not claim to have rendered any job specific construction services or to have been involved in any way in the installation of the opener; nor does defendant contend the opener was specifically designed for the home in question. Rather, the defendant merely supplied the opener to a dealer/distributor who then installed the opener. The courts have frequently refused to extend the coverage of similar statutes to suppliers or materialmen on the grounds that the statute was designed to protect those actors supplying individual expertise under circumstances not susceptible of the quality control standards of the factory. Therefore, coverage has been ex-

cluded to mere suppliers of standardized products. Protection extends "to the kinds of economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by architects and contractors—that is to say, to parties who render particularized services for the design and construction of particular improvements to particular pieces or real property." *Dighton*, 399 Mass. at 695, 506 N.E.2d at 515.

In our view the Arkansas statute and its interpretation by the Arkansas courts support such a distinction. For the reasons stated the defendant's motions for summary judgment will be denied by separate order entered concurrently herewith.

### ORDER

On this 21st day of January, 1994, upon consideration of defendant's motions for summary judgment, the court finds for the reasons set forth in a memorandum opinion of even date that said motions should be and hereby are denied.

IT IS SO ORDERED.