Linda **DEDMON**, etc., Plaintiff-Appellant,

v.

**STEWART–WARNER CORP.**, Defendant, Third–Party Plaintiff–Appellee and Appellant,

v.

Donald **HAMPTON**, et al., Third–Party Defendants–Appellees.

No. 90–4765.

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1992.

Rehearing Denied Feb. 6, 1992.

---

Carl Roth, Rosemary T. Snider, Jones, Jones, Curry & Roth, Marshall, Tex., for Linda Dedmon.

Marcus A. Carroll, Ireland, Carroll & Kelley, Tyler, Tex., for Jim Jordan & Jordan Air Conditioning.

Royce Coleman, Denton, Tex., for Jerry Bellar.

Frank O. McClendon, III, Mary Endres, McClendon, Holland & Endres, Tyler, Tex., for Stewart–Warner Corp.

Before REAVLEY, JONES and SMITH, Circuit Judges.

REAVLEY, Circuit Judge:

Eric Dedmon died of carbon-monoxide asphyxiation in 1986 while sleeping in the bedroom of his mother's home. Linda Dedmon (Dedmon), Eric's mother, filed this negligence and product-liability wrongful death suit in 1988 against Stewart–Warner Corporation (Stewart–Warner). Stewart–Warner was the manufacturer of the furnace installed in 1971 in the Dedmon home, and the complaint is that faulty performance of the furnace caused Eric Dedmon's death. The district court granted summary judgment for Stewart–Warner on grounds of a Texas statute of repose. Following Texas law, we affirm.

## I. BACKGROUND

Stewart–Warner did manufacture, design, and assemble the furnace that went in the Dedmon home when it was built in 1971; Stewart–Warner's agents did not install the furnace, enter the dwelling, or alter, modify, or repair the furnace following its installation. Stewart–Warner supplied its furnace assembled and boxed for installation in an overall home heating and air-conditioning "system." Stewart–Warner was not involved with the design or construction of the heating system, which includes fuel lines running to the furnace as well as flue and duct work leading from the furnace, but Stewart–Warner knew that its furnace would be installed as part of such a system. While the heating system could not readily be removed, the furnace itself could be removed and replaced or repaired with little alteration in the dwelling's structure. But the furnace was intended to remain and did remain in place from the time of its installation until after Eric Dedmon's death.

Stewart–Warner contended before the district court that, with respect to the furnace in question, Stewart–Warner is a person who constructs an improvement to real property and therefore qualifies for protection under Texas' statute of repose for architects and engineers. TEX.CIV.PRAC. & REM.CODE § 16.009 (Vernon 1986). This

statute requires that suits against persons who construct or repair improvements to real property be brought within ten years of the construction or repair.[1] Dedmon argued that Stewart–Warner is a materialman and not entitled to protection under section 16.009. Alternatively, Dedmon argued that Stewart–Warner's furnace was not an improvement to real property, but rather merely a component part of an improvement.[2]

The district court granted Stewart–Warner summary judgment under section 16.009, holding as a matter of law that the furnace itself constituted an improvement to real property, and that Stewart–Warner was sheltered by section 16.009. Dedmon appeals the judgment for Stewart–Warner, arguing that genuine fact issues exist as to whether the furnace is a component part of an improvement, as opposed to an improvement, and whether Stewart–Warner is a materialman as opposed to one who constructs an improvement.

## II. DISCUSSION

In 1969, the Texas legislature passed the statute now codified as section 16.009 to shield "architects, engineers and others involved in design, planning or inspection of improvements to real property" from the threat of indefinite future liability. Greg Thompson, *When the Walls Come Tumbling Down—Article 5536(a): the Texas Architect and Engineer Statute of Limitation*, TEX.TRIAL LAW. F., Oct.–Dec. 1983, at 28; *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 922 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Texas was not alone in enacting legislation to protect architects, engineers, and contractors from the prevailing intolerable extent of malpractice liability exposure. See *Pacific In-*

*demnity Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn.1977) (noting numerous states' legislative responses to liability expansion for architects and engineers resulting from erosion of privity defense and emergence of discovery rule); Peter J. Neeson, *The Current Status of Professional Architects' and Engineers' Malpractice Liability Insurance*, 45 INS. COUNS.J. 39 (1978) (describing development of model repose legislation by the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors). But the statute's terms cover any "person who constructs or repairs an improvement," and thus permit extending protection beyond just those professions, and Texas courts have interpreted the statute to cover some manufacturers of improvements to real property so long as the manufacturing process amounts to the construction of the improvement. *See, e.g., Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870, 872 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) ("the manufacture[r] of the [improvement] would be a person performing or furnishing construction of [the improvement]").

■ Lacking any jurisprudential survey of the metes and bounds of this essentially guild-oriented statute, the Texas courts have sought to define the perimeters of its application primarily by inspecting the terms that describe what *products*, rather than what *actors*, merit protection. The courts have looked to the concept of "improvement" for guidance in determining when to apply section 16.009. "Improvement" comprehends "all additions and betterments to the freehold." *Dubin v. Carrier Corp.*, 731 S.W.2d 651, 653 (Tex. App.—Houston [1st Dist.] 1987, no writ)

---

**1.** Section 16.009 provides that:

(a) A claimant must bring suit for damages for [wrongful death] against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.

Section 16.009 is a repose statute, not a statute of limitation. Its 10–year period for bringing suit runs from the date of construction or repair and not from the date of discovery. The statute effectively immunizes protected persons from suit brought more than ten years from the stated date.

**2.** As discussed *infra,* the manufacturers of component parts of improvements may not avail themselves of § 16.009.

(*Dubin I*); *Cantrell v. Broadnax*, 306 S.W.2d 429, 432 (Tex.Civ.App.—Dallas 1957, no writ). An improvement can be anything that "permanently enhances the value of the premises," *Dubin I*, 731 S.W.2d at 653, and may even be something easily removable so long as it is attached and intended to remain permanently as part of the building. *Ablin v. Morton Southwest Co.*, 802 S.W.2d 788, 791 (Tex. App.—San Antonio 1990, writ denied) (garage door opener is an improvement); *Dubin I*, 731 S.W.2d at 654 (wall heating unit is an improvement).

The statute's plain words protect any person who "constructs ... an improvement to real property," and do not distinguish whether the person constructs the improvement on the premises, or off of the premises for later installation by another. This statutory construction is confirmed by *Ellerbe*, 618 S.W.2d at 872 (manufacturer of office-building elevator is within repose statute even though manufacturer did not install elevator) and *Dubin I*, 731 S.W.2d at 654 (designer and manufacturer of wall heating unit is within repose statute despite having no involvement with construction of dwelling or installation of heater). So if an item qualifies as an "improvement," Texas courts will protect the manufacturer who constructs it, even if the construction takes place off premises and the manufacturer does not thereafter install, modify, or inspect it.

■ Texas' Supreme Court has narrowed section 16.009's application by distinguishing an "improvement" from a "component part" of an improvement and denying repose to component-part manufacturers.[3] *Conkle v. Builders Concrete Products Mfg. Co.*, 749 S.W.2d 489, 491 (Tex. 1988). We see two questions that merit discussion.

A. What is the difference between an improvement and a component part of an improvement under section 16.009?

*Reddix v. Eaton Corp.*, 662 S.W.2d 720 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.) announced the distinction between an "improvement" and a "component part." Eaton built part of an outdoor elevator to transport people from the top of a cliff to the water level of a lake. The elevator failed and injured Reddix. The elevator consisted of an electric hoist, a pre-fabricated steel cage, a supporting structure, and a steel load chain called a "link chain." *Id.* at 721–22. Eaton's predecessor built the electric hoist, and two other companies supplied the link chain according to Eaton's specifications. Eaton sold the fully-assembled hoist and chain mechanism to distributors for retail sale. In appealing an adverse summary judgment, Reddix argued that Eaton was not a "person performing or furnishing construction,"[4] and thus was not entitled to repose. *Id.* at 724. Reddix sought to characterize Eaton as a materialman who manufactured the elevator's component parts. The appellate court reversed and held for Reddix.

Quoting *Huddleston v. Nislar*, 72 S.W.2d 959, 962 (Tex.Civ.App.—Amarillo 1934, writ ref'd), the *Reddix* court applied the common-law definition of a materialman as a person "*who does not engage in ... building or contracting* to build homes ... but who *manufactures*, purchases or keeps for sale [or sells or furnishes] materials which enter into buildings *without performing any work or labor in installing or putting them in place.*" 662 S.W.2d at 724, (emphasis added by *Reddix* court). Noting that article 5536a protects "any person performing or furnishing construction or repair of any ... improvement," the *Reddix* court reasoned that a person who does not build or contract to build homes, or perform installation, does not furnish construction of an improvement. *Id.* The court concluded that Eaton, as manufacturer of the elevator hoist, and the link chain manufacturers, were materialmen not entitled to repose under article 5536a. *Id.* The court reached its conclusion by emphasizing the definition of a

---

3. As discussed *infra*, other courts have held that materialmen do not enjoy § 16.009's repose.

4. This language comes from Tex.Rev.Civ.Stat. Ann. art. 5536a, § 2 (Vernon Supp.1982–83), codified as amended in § 16.009.

materialman as one who manufactures and sells materials for buildings *without performing any work or labor in installing or putting them in place. Id.* But the *Reddix* court did not say whether its decision reached all off-site manufacturers, in conflict with *Ellerbe*, or just component-part manufacturers.

The Texas Supreme Court in *Conkle* applied section 16.009 to the manufacturer of metal hoppers designed and made to be installed as part of a portable concrete batch plant consisting of hoppers, bins, and a mixing apparatus. Conkle died while working inside one of the hoppers. The manufacturer won summary judgment under section 16.009 but the court found a genuine issue as to whether the manufacturer had "constructed an improvement to real property." 749 S.W.2d at 490. The court noted "testimony that [the manufacturer] had not manufactured the entire structure ... [and] that the plant is actually portable." *Id.* at 491. Citing *Reddix* for the proposition that "[m]anufacturers of component parts do not come within" section 16.009, the court found the metal hopper more like *Reddix'* hoist and chain than *Ellerbe's* elevator, stating "[t]here was no question that Otis Elevator ... had manufactured the *entire elevator unit." Id.* (emphasis added). So *Conkle* preserved an off-site manufacturers' repose, but only if the manufacturer constructs the entire improvement and not a component part of it.

Dedmon's contention that Stewart–Warner's furnace is really a component part of an improvement—the heating system—rather than the improvement itself, spotlights a breach in the perimeter of the Texas courts' application of section 16.009. We find the "improvement versus component part" distinction difficult to apply because, if only systems can be improvements, there is no principled way to tell whether an item is a system or a part of one. Arguably, the ducts that convey warm air from the heater throughout the dwelling are part of the attic system, rather than the heating system. Or if, as in this case, they convey chilled as well as heated air, it is fair to say that the ducts themselves are an "air-moving system" to which two "air-temperature modification systems" attach.

Texas' appellate courts have skirted this conundrum, twice applying the statute to manufacturers of home heating furnaces and concluding that those manufacturers merit repose. In *Dubin I,* the plaintiff's daughter died from inhaling carbon monoxide emitted from a wall heater in her apartment. Williams Furnace Company (Williams) designed and manufactured the heater for distribution by Carrier Corporation. The heater was built into an apartment wall and connected to a flue. Williams did not install the furnace or design or install the heating "system" that included the heating unit.

The *Dubin I* court found as a matter of law that the heating unit constituted an improvement even though it could operate in a "free-standing" mode. 731 S.W.2d at 653. And because Williams as manufacturer "furnished construction of [the] improvement" the court accorded Williams section 16.009's protection. *Id.* at 654. Following remand, Dubin returned to the court of appeals to contend that Williams was a materialman, and thus merited no repose, because Williams manufactured components of the heater as well as the entire heater assembly. *Dubin v. Carrier Corp.,* 798 S.W.2d 1 (Tex.App.—Houston [14th Dist] 1989, writ dism'd by agr.) (*Dubin II*). Citing *Conkle* and *Reddix,* the *Dubin II* court disagreed with the contention that Williams was "nothing more than" a materialman or component-part manufacturer

> because Williams did far more than simply supply parts. Indeed, Williams both made a portion of the unit *and also* manufactured the entire assembly. Had Williams produced only a component part, appellant's argument would possess greater force; but we cannot see why [Williams] should lose the statutory protection which it would have deserved had it manufactured the entire heater *without* also making a component part.

*Id.* at 2 (emphasis in original). So without further explanation, the court reiterated its conclusion that a heater is an improvement and not a component, and that its manufac-

turer is protected by section 16.009. Following *Dubin I, Rodarte v. Carrier Corp.*, 786 S.W.2d 94 (Tex.App.—El Paso 1990, writ dism'd by agr.) summarily concluded that Carrier, as the manufacturer of the shopping-center furnace whose alleged defect electrocuted Rodarte, was a "person who constructs an improvement" within the meaning of section 16.009. *Id.* at 96.

Therefore, if section 16.009 applies to a class of items or products rather than to a class of actors, the Texas appellate courts that have decided the issue persuade us to place permanently-installed home heating furnaces in the class of improvements whose manufacturers merit repose, and not in the class of component parts. *Dubin I,* 731 S.W.2d at 654; *Dubin II,* 798 S.W.2d at 2; *Rodarte,* 786 S.W.2d at 96.

B.  Whom did the legislature intend to protect with section 16.009, and why are materialmen left out?

Texas decisions also convey an undercurrent of thought that the character of the economic actor in the construction business should determine section 16.009's applicability. *Reddix*, for example, implies that the component-part manufacturer merits no repose *because* of the manufacturer's status as a materialman—one who is not directly involved with actual construction, installation, or repair—and not because of the character of the product manufactured. "[T]he [Reddix] appellees are materialmen within the [common law] definition.... The question squarely before us is whether materialmen come within the statutory language...." 662 S.W.2d at 724.

*Reddix* might also be read to say that a materialman falls outside section 16.009 for the reason that the materialman manufactures or sells component parts. *Reddix* specifically holds only "that component part manufacturers are not protected...." *Id.* And in *Conkle*, the Texas Supreme Court took up the "component-part" analysis directly from *Reddix* without discussing the hopper-manufacturer's status as a ma-

terialman, and then went on directly to cite *Ellerbe* as authority even though *Ellerbe* found an off-site improvement manufacturer (a materialman under *Reddix*) entitled to repose. Therefore *Conkle*, which we must follow, supports the product-oriented "improvement" line of reasoning rather than the actor-oriented reasoning that Dedmon urges in support of the materialman exception.

*Dubin I* reiterated without approval the contention that the legislature meant for the repose statute to protect persons "who have no control over the real estate improvement and have no authority to go onto the premises" to inspect the improvement, insure that it is being used properly, and check for alterations that render it defective. 731 S.W.2d at 654. *Dubin I* advocates a "functional" approach to determining section 16.009's applicability. But the court did not explain how to identify or analyze the "functions" relevant to determining whether an actor such as Stewart-Warner qualifies as a designer or manufacturer, or as a materialman. 731 S.W.2d at 654–55 (observing only that one who supervises and inspects construction without intending to maintain control of the premises "function[s] ... as ... a person performing or furnishing construction"). *Conkle* teaches that manufacturers of the component parts of improvements to real property,[5] as opposed to manufacturers of improvements, obtain no repose from section 16.009. But *Conkle* doesn't explain what characteristic of component-part manufacturers strips them of protection.

We suspect that the Texas Legislature intended the repose statute to protect a specific class of economic actors—construction-industry professionals who perform certain functions. But the broad wording of the statute blurs the intended boundaries of that class. If *Dubin I* supplies the correct functional analysis, we have only slightly more guidance because many manufacturers of real estate fixtures lack au-

---

**5.** Even though *Conkle's* facts raised an issue only as to component parts of a *portable* product, we think that the *Conkle* court's component-part discussion merits our conclusion that the court would have reached the same result had the facts involved a permanently-installed product.

thority to inspect those fixtures once installed. If we look for the correct analysis in the legislative intent of protecting architects, engineers, and contractors, we might be inclined to draw a boundary that includes only those persons who supply "individual expertise not susceptible of the quality control standards of the factory" [6] and excludes manufacturers or suppliers of standardized goods such as circuit breakers, garage door openers, and mass-produced heating units. However, doing so would require us to depart from an unbroken line of authority developed in several Texas appellate court decisions applying the repose statute to manufacturers of such goods intended for use as improvements. See *Ablin*, 802 S.W.2d at 791 (garage door opener); *Dubin I*, 731 S.W.2d at 654 (wall heating unit); *Rodarte*, 786 S.W.2d at 96 (furnace). And cf. *Conkle*, 749 S.W.2d 491 (tacitly approving application of repose statute to manufacturer of permanently-installed elevator). We are controlled by this Texas authority.

## III. CONCLUSION

We find no plausible contention on appeal that Stewart–Warner's furnace at issue in this case was intended to be portable, or that it was not intended to enhance the value of the dwelling. We think that it is impossible as a matter of Texas law for Dedmon to establish that Stewart–Warner's furnace is merely a component part of an improvement for the reason that it is part of a "system." And, because Stewart–Warner manufactured an improvement, we reject Dedmon's contention that Stewart–Warner is a materialman under section 16.009. Under Texas law, Stewart–Warner is no materialman for the same reason it is not a component-part manufacturer. Materialmen who manufacture or supply component parts of improvements are excepted because they manufacture or supply the

component parts instead of the improvements.[7] We think that this construction preserves the product-oriented focus adopted by Texas' highest court in *Conkle*, and construes *Reddix* in a manner consistent with that focus.

Because we conclude that Stewart–Warner is a "person who constructs an improvement" within the meaning of section 16.009, we affirm the judgment of the district court. Stewart–Warner's cross-appeal of summary judgments in favor of the third-party defendants against whom Stewart–Warner seeks contribution or indemnification is dismissed as moot.

AFFIRMED.

---

**6.** See *Dighton v. Federal Pacific Elec. Co.*, 399 Mass. 687, 506 N.E.2d 509 (Supreme Judicial Court of Mass., Suffolk 1987).

**7.** We think that it is not the "off-site" status of a manufacturer or supplier alone that takes the

materialman out of the statute's coverage. We need not address the issue of whether it would be possible, despite *Ablin* and *Ellerbe*, for an improvement to be constructed by a materialman and whether, in that instance, § 16.009 would apply.