**MARSHALL INDEPENDENT SCHOOL DISTRICT, Plaintiff,**

v.

**UNITED STATES GYPSUM CO., Defendant.**

No. 2:90 CV 8.

United States District Court, E.D. Texas, Tyler Division.

April 9, 1992.

As Amended April 15, 1992.

On Motion for Reconsideration May 20, 1992.

Francis Scott Baldwin, Baldwin & Baldwin, Marshall, Tex., Joseph B. Cox, Jr., Ness Motley Loadholt Richardson & Poole, Charleston, S.C., for Marshall Independent School Dist.

Don Wayne Kent, Christian E. Bryan, Cowles & Thompson, Tyler, Tex., for Celotex Corp.

Greg Keith Winslett, Strasburger & Price, Dallas, Tex., for GAF.

Stephen Smith Andrews, Woodard, Hall & Primm, Houston, Tex., for U.S. Gypsum Co.

## AMENDED MEMORANDUM OPINION

JUSTICE, District Judge.

Plaintiff Marshall Independent School District (MISD) filed its original petition in this action in the District Court of Harrison County, 71st Judicial District of Texas, on December 18, 1989. Plaintiff, a public school district, alleged that the several defendants named in its petition had manufactured and sold to MISD acoustical spray-on ceiling materials containing asbestos, which were incorporated into various school buildings. MISD claimed that the buildings where the asbestos materials were used thus became a health hazard to their inhabitants, because of the link between inhaling asbestos fibers and various diseases and disorders. MISD alleged that it had instituted a variety of costly procedures to abate the asbestos hazards in its buildings.

On January 12, 1990, a defendant in the state court action removed the case to the United States District Court for the Eastern District of Texas, Marshall Division, in conformity with 28 U.S.C. §§ 1441 and 1446. Defendant United States Gypsum Company (USG) filed its original answer on January 15, 1990. As of the time USG moved for summary judgment on March 9, 1992, it was the sole, remaining defendant in the above-entitled and numbered civil action. Plaintiff filed its response to USG's motion for summary judgment on March 24, 1992. Defendant's summary judgment motion is now before the court.

*Standard for Summary Judgment*

Under Fed.R.Civ.P. 56(c), to prevail on a motion for summary judgment, the moving party bears the burden of demonstrating that the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *L & B Hosp. Ventures v. Healthcare Int'l, Inc.,* 894 F.2d 150, 151 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 55, 112 L.Ed.2d 30 (1990). The movant must identify the portion of the record that highlights the absence of genuine factual issues. *Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir.1992).

The substantive law underlying each of the claims in issue identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[1] If any such facts are genuinely in dispute, summary judgment is inappropriate. A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. When assessing a motion for summary judgment, the court must make all factual inferences

---

1. Because this is a diversity case, the substantive law of Texas controls. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 975 (5th Cir.1991). However, the judge is not to weigh the evidence, nor engage in credibility determinations. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

### Application to the Case at Bar

Defendant USG argues that the Texas Statute of Repose, Tex.Civ.Prac.Rem.Code Ann. sec. 16.009 (Vernon 1986), bars all of plaintiff's claims. Subsection (a) of this statute provides that:

> A claimant must bring suit for damages ... against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.

Subsection (e)(3) states that "[t]his section does not bar an action ... based upon wilful misconduct or fraudulent concealment in connection with the performance of the construction or repair." It is undisputed that MISD brought this suit outside the period allowed by sec. 16.009. However, plaintiff argues: 1) there is a genuine issue of material fact as to whether USG comes within the terms of the statute; 2) there is a genuine issue of material fact as to whether USG's conduct falls within the wilful misconduct subsection; and 3) sec. 16.-009 does not have a retroactive effect and does not apply to this case.

Two months ago, in another division of this district, the Hon. Joe Fisher issued a memorandum opinion, relating to the very issues presented here, in *Dayton Independent School District v. U.S. Mineral Products*, No. 1:87cv507, 1992 WL 62185 (E.D.Tex.Beaumont Div. Feb. 12, 1992), a case in which USG was also a defendant. Relying on the legislative history of the identical, predecessor statute of § 16.009 (Tex.Rev.Civ.Stat.Ann. art. 5536a, sec. 2) the learned judge persuasively reasoned that the repose statute was designed to protect only persons providing professional services, and that USG and the other asbestos manufacturers did not fall within its terms because they were "materialmen", who manufactured and supplied standardized goods susceptible of quality control.

▮ However, as defendant points out, the United States Court of Appeals for the Fifth Circuit had articulated a different construction of the statute in *Dedmon v. Stewart-Warner Corp.*, 950 F.2d 244 (5th Cir.1992), published just prior to the issuance of the opinion in the Dayton Independent School District case. Nevertheless, plaintiff argues that the Fifth Circuit did not have the legislative history relied upon by the Dayton court before it, and, therefore, Judge Fisher's reasoning should be followed here. This contention is unacceptable. Firstly, in *Dedmon*, the Fifth Circuit explicitly recognized that the legislative intent behind § 16.009 supported drawing a distinction between professional and non-professional economic actors, the line of analysis adopted by the Dayton court. 950 F.2d at 249–50. Despite the logic of this approach, and because an unbroken line of Texas authority was to the contrary, the panel rejected the professional/non-professional framework. *Id.* at 250. Secondly, even if the *Dedmon* panel had failed to consider the same legislative history relied upon by the Dayton court, the appellate opinion would be binding precedent nonetheless.

*Dedmon* interpreted Texas case law construing sec. 16.009 as focusing on what *products*, rather than what *actors*, merit the protection of the statute. *Id.* at 246 (emphasis in original). The panel perceived that Texas courts have looked to the concept of 'improvement' for guidance in determining when to apply section 16.009.[2] *Id.* If the item qualifies as an 'improvement', Texas courts will protect the manu-

---

**2.** Because the terms such as 'improvement', 'component part', etc., are being used in a specialized sense, as defined by applicable state law, throughout this memorandum opinion the terms will be placed in single quotation marks.

facturer who constructs it, even if the construction takes place off premises and the manufacturer does not thereafter install, modify, or inspect it. *Id.* at 247. However, the Fifth Circuit noted that the Texas Supreme Court had narrowed section 16.-009's application by distinguishing an 'improvement' from a 'component part of an improvement' and denying repose to 'component part' manufacturers. *Id.* (citing *Conkle v. Builders Concrete Products Mfg. Co.*, 749 S.W.2d 489, 491 (Tex.1988) (per curiam)).

The salient question posed by *Dedmon*, and the present situation, is whether the particular product involved is an 'improvement' or a 'component part of an improvement'.[3] · Defendant USG argues that the recent case of *Trust Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144 (5th Cir.1992), is determinative of this question. *Trust Co. Bank* considered whether USG's manufacture of fireproofing materials containing asbestos fell within the Mississippi statute of repose's definition of "improvement to real property." Miss.Code Ann. sec. 15–1–41 (Supp.1991). Noting that the Mississippi statute was "much broader than most statutes of repose", and relying on the case of *Collins v. Trinity Industries, Inc.*, 861 F.2d 1364 (5th Cir.1988), the *Trust Co. Bank* panel applied the "customary meaning" of 'an improvement to real property' and held that asbestos fell within the meaning of the term as used in the *Mississippi statute of repose*. 950 F.2d at 1151–52 (emphasis supplied).

The earlier *Collins* case had examined and analyzed Miss.Code Ann. sec. 15–1–41 in detail. The Fifth Circuit panel in that case relied primarily on the construction of the statute provided by the Mississippi Supreme Court in *Smith v. Fluor Corporation*, 514 So.2d 1227 (Miss.1987). The Mississippi Supreme Court reasoned that since the statute did not define 'improvement to real property', the phrase must be given its ordinary meaning. *Collins*, 861 F.2d at 1365 (citing *Smith v. Fluor*, 514 So.2d at 1230). The state court had found the term covered "a wide range of structures *and components....*" *Id.* (emphasis added).

Therefore, in *Trust Bank Co.*, when the Fifth Circuit applied Mississippi law to find asbestos came within that state's statute of repose, it applied a definition of 'improvement to real property' that *included* component parts with that term. As the Fifth Circuit recognized in *Dedmon*, Texas law specifically *excludes* manufacturers of 'component' parts from the protections of sec. 16.009. 950 F.2d at 247, 249–50. Necessarily, the Fifth Circuit's determination that spray on ceiling asbestos falls within the Mississippi statute of repose does not illuminate whether such asbestos products come under the Texas statute, because component parts are included within the former and excluded from the latter. In short, *Trust Bank Co.* does not control this case.

*Dedmon* extensively considered the distinction between 'improvement' and 'component part' under Texas law and found "it difficult to apply...." 950 F.2d at 248. *Dedmon* presented the issue of whether a home heating unit was an 'improvement' or a 'component part of an improvement' under Texas law. The Fifth Circuit noted that logically the heater could be considered a component part of a home's "air moving system". *Id.* However, since two Texas courts of appeals had determined, as a matter of law, that home heating furnaces were 'improvements' rather than 'components of improvements', the *Dedmon* court considered itself obligated to follow Texas law, and, therefore, classified the home heating units in the same manner. 950 F.2d at 249.

The origins of the distinction between an 'improvement' and a 'component part thereof' may be traced to the contrasting results reached in *Ellerbe v. Otis Elevator Co.*,

---

**3.** *Dedmon* concluded that the "undercurrent of thought" in Texas cases distinguishing materialmen and suppliers from professionals, *see, e.g., McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 922 (Tex.App.—Dallas 1985, writ ref'd n.r.e.), was a mere surrogate for the 'improvement'- 'component' distinction. The Dayton court reached the opposite conclusion, finding the 'improvement'-'component' line of analysis to be a shorthand for the supplier-professional demarcation.

618 S.W.2d 870 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), *appeal dismissed for want of a substantial federal question,* 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982), and *Reddix v. Eaton Corp.,* 662 S.W.2d 720 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Both cases concerned the predecessor statute to Tex. Civ.Prac.Rem.Code Ann. sec. 16.009 (Vernon 1986), *i.e.,* Tex.Rev.Civ.Stat.Ann. art. 5536a, sec. 2 (Vernon Supp.1982–83), and both arose in the context of defendant motions for summary judgment that had been granted by the trial court.

*Ellerbe* involved a suit against the manufacturer of an elevator located in a multistoried building. The Court of Civil Appeals had little trouble concluding the elevator was an 'improvement on real property'. 618 S.W.2d at 872. Summary judgment for the manufacturer based on the statute of repose was affirmed in that case. *Id* at 874. *Reddix* also involved an elevator. In contrast to situation in *Ellerbe,* the several defendants in *Reddix* had not manufactured the elevator itself, but the hoist mechanism, and the link chain for that mechanism, respectively. The *Reddix* court distinguished *Ellerbe,* and found the defendants were not covered by the statute of repose, because they had manufactured only component parts. 662 S.W.2d at 724. Therefore, the Court of Appeals reversed the summary judgment in favor of the manufacturers and remanded the case to the trial court. *Id.*

In *Dubin v. Carrier Corp.,* 731 S.W.2d 651 (Tex.App.—Houston [1st Dist.] 1987, no writ) *(Dubin I),* the appellate court concurred with the trial court's conclusion that a furnace was an 'improvement to real property'. The *Dubin* court defined 'improvement' as comprehending "all additions and betterments to the freehold" including anything that permanently enhances the value of the premises. 731 S.W.2d at 653. It also noted the term 'improvement' was broader than the concept of 'fix-

ture'. *Id.* Nevertheless, because there was no summary judgment evidence that the heaters in *Dubin* had been manufactured outside the applicable period furnished by sec. 16.009, the appellate court reversed the summary judgment which had been entered for the defendants and remanded the case to the trial court. *Id.* at 654.

While *Dubin* was being reconsidered by the lower court, the Texas Supreme Court issued its opinion in *Conkle v. Builders Concrete Products Mfg. Co.,* 749 S.W.2d 489 (Tex.1988) (per curiam). In *Conkle,* suit had been brought by the parents of a worker at a concrete batch plant who had been killed in an on-the-job accident. The Texas Supreme Court reversed the summary judgment based upon sec. 16.009 that had been entered in favor of the manufacturer of the bins and hoppers used in the concrete batch plant. It did so on the grounds that the defendant had failed to establish as a matter of law that it had constructed an 'improvement to real property' within the meaning of the statute rather than a 'component part'. 749 S.W.2d at 490. Relying on the distinction between *Ellerbe* and *Reddix,* the court found it significant that there was evidence that the defendant had not manufactured the entire structure in question. The court remanded the case for resolution of the disputed *issue of fact* whether the product at issue was an 'improvement to real property' or a 'component part of an improvement'. *Id.* at 491 (emphasis added).

As noted above, the Fifth Circuit has held that *Conkle* "narrowed" section 16.-009's application.[4] *Dedmon,* 950 F.2d at 244. However, *Conkle* did not restrict *Ellerbe* to its facts and it remained valid precedent, along with *Reddix. See Dubin v. Carrier Corp.,* 798 S.W.2d 1, 3 n.* (Tex. App.—Houston [14th Dist.] 1989, writ dism'd by agr.) *(Dubin II)* *(Conkle, Ellerbe,* and *Reddix* "can comfortably fit within the same legal universe"). *See also,*

---

**4.** Therefore, it is open to question whether the broad definition of 'improvement' employed by *Dubin I* is a completely accurate statement of Texas law. *Ablin v. Morton Southwest Co.,* 802 S.W.2d 788, 791 (Tex.App.—San Antonio 1990,

writ denied), applied the *Dubin I* definition to find a garage door opener an 'improvement' as a matter of law, but the court failed to cite *Conkle, Ellerbe, Reddix,* or engage in an analysis whether the opener was a component part.

*Dayton Indep. School Dist. v. U.S. Mineral Products*, at 14. After the *Dubin* trial court again granted summary judgment to the defendant based on the statute of repose, the appellate court issued a second opinion and this time affirmed. Applying *Conkle*, the *Dubin II* Court of Appeals found that while the defendant had supplied component parts for the heating furnace, it had also manufactured the entire heating assembly itself. As a matter of law it had manufactured an 'improvement to real property'. Therefore, the defendant fell within the terms of sec. 16.009 and was protected by it from a lawsuit filed beyond the applicable time limitations. 798 S.W.2d at 2.[5]

■ Based on the reasoning employed by *Dedmon, Conkle,* and *Reddix,* it is concluded there is a genuine issue of material fact as to whether the spray on, ceiling asbestos manufactured by defendant USG is an 'improvement' or a 'component part of an improvement' under Texas law, for the purposes of sec. 16.009.[6] Plaintiff's attorney has executed a sworn affidavit that the facts in its reply brief are correct. The brief details the process by which asbestos is added to a building: The product leaves the manufacturer as a powdery substance and is mixed with water, and transformed into a liquid so that it can be applied.

Plaintiff argues that the powdered asbestos manufactured by defendant USG is as much a 'component part' of the improvements to the building as is the water used to create the liquid which is applied to the

ceiling. Whether or not this analogy is accurate, it is concluded that the product at issue here is sufficiently different in kind from a furnace, a swimming pool, or an elevator, so as to preclude the conclusion that it is an 'improvement' as a matter of Texas law.[7]

■ Plaintiff argues, in the alternative, that defendant's motion for summary judgment must be denied on the basis that there is a genuine issue of material fact as to whether USG fraudulently concealed the dangers of asbestos or committed wilful misconduct, and thus is barred from taking advantage of the statute of repose. Tex. Civ.Prac.Rem.Code Ann. sec. 16.009(e)(3) (Vernon 1986). Mere conclusory allegations are not sufficient to defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.1992). Nor may parties rest upon mere allegations in their pleadings without setting forth evidence establishing a genuine issue worthy of trial. *Id.* However, plaintiff has demonstrated sufficient factual issues in this case to defeat USG's motion for summary judgment on the alternative basis that defendant's past conduct may place it within sec. 16.009(e)(3) and, therefore, outside the statute of repose.

■ In Texas, the elements of fraudulent concealment that a plaintiff must prove to recover are: (1) that a material misrepresentation or concealment was made; (2) that it was false; (3) that when the speaker made the misrepresentation or

---

**5.** Following the lead of *Dubin I, Rodarte v. Carrier Corp.,* 786 S.W.2d 94, 95–96 (Tex.App.—El Paso 1990, writ dism'd by agr.) also held that a heater was an 'improvement' rather than a 'component part'. As the Fifth Circuit noted in *Dedmon, Rodarte*'s analysis of the issue was summary. 950 F.2d at 249. The Fifth Circuit was generally critical of the depth of analysis applied by Texas courts in much of the relevant case law in this area.

**6.** Defendant USG argues that the permanence of the asbestos and the difficulty of removing it requires a finding that it is an 'improvement', citing *Dubin.* *Dubin* discussed "permanence" and "difficulty of removal" as they related to the definition of 'fixture'. 731 S.W.2d at 653. It also stated an 'improvement' included a permanent enhancement of value. *Id.* Portability

was a factor considered in both *Dubin* and *Conkle,* but under the Fifth Circuit's analysis provided by *Dedmon,* which is binding on this court, "permanence versus portability" is not the issue but rather "improvement versus component part". 950 F.2d at 249 n. 5.

**7.** In *Barnes v. J.W. Batson Co., Inc.,* 755 S.W.2d 518 (Tex.App.—Fort Worth 1988, no writ), the Court of Appeals rejected the challenge that sec. 16.009 was unconstitutional. Whether the product at issue, a "bus duct" containing high voltage wires, was within the terms of sec. 16.009 was *not* raised on appeal and the *Barnes* court did not consider *Conkle* or engage in the requisite 'improvement'-'component' part analysis. The Fifth Circuit, in *Dedmon,* did not cite *Barnes,* possibly for the reason that it sheds no light on the product classification issue.

concealment, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; (6) that the other party suffered injury. *DeSantis v. Wackenhut*, 793 S.W.2d 670, 688 (Tex.), *cert. denied,* — U.S. ——, 111 S.Ct. 755, 112 L.Ed.2d 775 (1990); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183 (Tex.1977). Constructive fraud is the breach of some legal or equitable duty which the law declares to be fraudulent to deceive others, to violate confidence, or to injure public interests. *Ablin v. Morton Southwest Co.*, 802 S.W.2d 788, 793 (Tex. App.—San Antonio 1990, writ denied).

■ As noted above, in this case, plaintiff's attorney has executed an affidavit that the factual statements in its brief, including those which outline USG's past conduct, are correct. It would have been preferable if plaintiff had attached more evidence of what it describes as the attempted cover-up by the asbestos manufacturers dating back to 1937. Evidence such as relevant discovery responses or the text of the September 21, 1981, report of the United States Attorney General that plaintiff alleges found a conspiracy of silence by asbestos manufacturers would have been welcome. On the other hand, defendant has not specifically designated the portions of the record that show an absence of a material factual dispute on this point. It is concluded that there is a genuine issue of material fact whether defendant USG fraudulently concealed the hazards of asbestos or committed wilful misconduct in hiding the dangers of it.

For the reasons articulated above, defendant USG's motion for summary judgment will be denied.[8]

## ON MOTION FOR RECONSIDERATION

The order and memorandum opinion denying defendant USG's motion for summary judgment based upon the Texas Statute of Repose, Tex.Civ.Prac.Rem.Code Ann. sec. 16.009 (Vernon 1986), were issued on April 10, 1992. USG's brief replying to plaintiff MISD's memorandum in opposition to summary judgment and the brief's accompanying appendices, both filed on April 13, 1992, were not considered in the adjudication of defendant's motion. Furthermore, these submissions had not been presented to the court when a slightly amended memorandum opinion was issued on April 15, 1992. The instant opinion should be considered *in pari materia* with the one issued on that date.

■ On April 27, 1992, USG served, and then filed, a timely motion for reconsideration.[1] Alternatively, USG moved for certification of the April 10, 1992, order, in accordance with 28 U.S.C. § 1292(b), as one involving a controlling question of law as to which there is a substantial ground for difference of opinion, an appeal of which would materially advance the ultimate termination of the litigation. In large part, the motion consisted of USG's previously filed reply brief and appendices. In addition, on May 4, 1992, defendant submitted a memorandum opinion by the Honorable Barefoot Sanders in *Corbally v. W.R. Grace & Co.*, No. 3–88–1884–H (N.D.Tex. April 28, 1992), which addressed the same questions pertinent here. Plaintiff, on May 11, 1992, provided a copy of the Hon. Joe Fisher's denial of the motion for reconsideration in *Dayton Independent School District v. U.S. Mineral Products*, 789 F.Supp. 819 (E.D.Tex.1992), along with

---

**8.** Plaintiff's argument that the predecessor to § 16.009, art. 5536a, sec. 2 does not have a retroactive effect is not well taken. *See Ellerbe*, 618 S.W.2d at 872 (applying statute to elevator constructed in 1928).

**1.** A motion to reconsider is treated as a motion to alter or amend judgment under Fed.R.Civ.P. 59(e). *See Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 669–70 (5th Cir.) (en banc), *cert. denied*, 479 U.S. 930, 107 S.Ct. 398,

93 L.Ed.2d 351 (1986) (any motion filed within ten days of entry that calls into question correctness of judgment is functionally a motion under Fed.R.Civ.P. 59(e), whatever its label). A motion under Fed.R.Civ.P. 59(e) must be served within ten days after entry of judgment; here, April 15, 1992. Time computation is governed by Fed.R.Civ.P. 6(a). Service on or before April 29, 1992, would have been timely.

MISD's briefs opposing reconsidering and certification. Defendant submitted a brief reply on May 15, 1992.

Defendant's motion for certification of that portion of the previously issued memorandum opinion concerning whether USG had constructed an 'improvement' or a 'component part' continues to misapprehend the nature of this question under Texas law. The Texas Supreme Court addressed this issue in *Conkle v. Builders Concrete Products Mfg. Co.*, 749 S.W.2d 489, 491 (Tex.1988). Under the principles of federalism engendered by the *Erie* doctrine,[2] that decision is binding on this court as the definitive statement of Texas law, as the Fifth Circuit specifically indicated in *Dedmon v. Stewart–Warner Corp.*, 950 F.2d 244, 249 (5th Cir.1992). *Conkle* holds that whether a product is an 'improvement' or a 'component part' is a *question of fact* dependent on the particular circumstances of that product's use. 749 S.W.2d at 490–91.[3] Because the requirements of 28 U.S.C. § 1292(b) are not satisfied in this case, defendant's motion for certification will be denied.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court explored the standard to be applied in evaluating whether a movant has met its summary judgment burden. With the possible exception of Justice Stevens, who did not indicate his interpretation of Fed.R.Civ.P. 56, the Court was of one mind as to how the summary judgment proof operates. *See* 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure*, § 2727, at Supp. 30 (1992). While technically dissenting as to the disposition of the case before the Court, Justices Brennan, Black-

mun, and Burger provided significant and useful elaboration upon the procedures sketched by Justice Rehnquist's majority opinion. *See Celotex*, 477 U.S. at 329, 334, 106 S.Ct. at 2555–56, 2558–59 (opinion of Brennan, J., dissenting) (stating that he had no disagreement with the Court's legal analysis and saw nothing in the majority opinion either inconsistent with or different from his elaboration).

Under Texas law, USG has the burden of persuasion to demonstrate that § 16.009 applies to it, *i.e.*, USG must show it is a "person who constructs ... an improvement to real property". *See Conkle*, 749 S.W.2d at 491; *Dubin v. Carrier Corp.*, 731 S.W.2d 651, 653 (Tex.App.—Houston [1st Dist.] 1987, no writ) (*Dubin I*). In the context of its motion for summary judgment, USG was initially required to produce a quantum of evidence that would entitle it to a directed verdict on this issue, assuming such evidence were not controverted at trial. *See Celotex*, 477 U.S. at 331, 106 S.Ct. at 2556–57 (opinion of Brennan, J., dissenting). After such a showing, the burden of production would have shifted to MISD to prove there was a genuine issue of material fact as to whether USG's product was an 'improvement' or a 'component part'. *Id.*

However, in its original motion for summary judgment, defendant USG failed to introduce *any evidence* concerning how its products were installed or utilized in the specific context of MISD's buildings.[4] Instead, USG relied on the Fifth Circuit's recent opinion regarding the Mississippi statute of repose, *Trust Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144 (5th Cir.1992), and several Texas cases concerning other products to support its contention that fire-

---

**2.** *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**3.** *Cf. Kazmir v. Suburban Homes Realty*, 824 S.W.2d 239, 243, 247 (Tex.App.—Texarkana 1992, writ of error filed Mar. 18, 1992) (whether person falls within Tex.Civ.Prac.Rem.Code Ann. sec. 16.008, statute of repose for engineers, is a question of fact; summary judgment for defendant reversed and case remanded for trial).

To say a particular inquiry is "factual" does not necessarily mean the question should go to

the jury. The issue of 'improvement' versus 'component part' may best be described as a mixed question of fact and law. Whether the court or a jury should decide if USG has been a "person who constructs ... an improvement to real property" under § 16.009(a) is not an issue ripe for determination at this juncture.

**4.** Defendant's counsel made factual assertions in USG's brief; they are not, in themselves, proper summary judgment evidence under Fed.R.Civ.P. 56(e). *Cf.* note 8 *infra.*

proofing materials, *per se*, are 'improvements' as a matter of Texas law. Defendant's motion for summary judgment was denied primarily for the reason that USG had not produced sufficient factual evidence to support a conclusion that it had constructed an 'improvement' to MISD's buildings.[5]

In its motion for reconsideration, USG once again has asked this court to resolve the issue of 'improvement' versus 'component part' as a matter of abstract legal analysis. Defendant has reurged the persuasiveness of *Trust Bank*,[6] and contended that "a fair reading" of § 16.009 itself "compels" the conclusion that USG's products are 'improvements'. However, defendant's mode of analysis cannot be adopted without running afoul of the Texas Supreme Court's decision in *Conkle*, and by extension, the Fifth Circuit's opinion in *Dedmon*.

In an exhibit accompanying its motion for reconsideration, USG has submitted the trial testimony of one of its product managers, which was obtained from the case of *Perlmutter v. U.S. Gypsum Co.*, 87–M–150 (D.Colo.). At trial the manager described some of the physical characteristics of the products that USG had manufactured over the years and sketched installation processes. This is the general type of evidence that would be probative of whether a product functioned as an 'improvement to real property', or as a 'component part'. There is no reason why similar information cannot be produced, by affidavit or otherwise, regarding the deployment and employment of USG products in MISD's buildings. However, USG has not proffered

any such evidence in support of its motion for reconsideration. Defendant has not yet produced sufficient evidence to meet its summary judgment burden that the products at issue in this case were 'improvements' under the circumstances of their use, and that USG, therefore, falls within the perimeters § 16.009.[7] The motion to reconsider the earlier ruling on this issue will be denied.

As an alternative grounds for decision, the April 15, 1992, memorandum opinion found there to be a genuine issue of material fact as to whether USG had engaged in fraudulent concealment or wilful misconduct in regards to "the performance of ... construction." If wilful misconduct or fraudulent concealment were actually shown, USG would be disqualified from taking refuge in the statue of repose. § 16.009(e)(3). As USG correctly contends, plaintiff MISD has the burden of persuasion as to the applicability of the escape hatches from the repose statute, which are listed in § 16.009(e). *Suburban Homes v. Austin–Northwest Dev. Co.*, 734 S.W.2d 89, 91 (Tex.App.—Houston [1st Dist.] 1987, no writt).

■ Even where the non-moving party has the burden of persuasion on an issue, the summary judgment movant still has the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove its case. *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555 (White, J., concurring); 477 U.S. at 331–32,

---

5. There was no need to consider any evidence MISD submitted on this question, as a matter of summary judgment mechanics, since USG had not discharged its initial burden of production. The basis for MISD's contention that USG's product is a 'component part' was described merely for informational purposes.

6. Judge Sanders' opinion in Corbally relied upon *Trust Bank Co.* as a basis for the conclusion that fireproofing is an 'improvement' under Texas law. For the reasons articulated in the April 15, 1992, memorandum opinion, *Trust Bank* sheds little light on the status of USG's products under Texas law.

7. *Dedmon* deliberately left open the question of the applicability of § 16.009 to a situation where the facts demonstrated that a defendant had constructed an 'improvement to real property', but, nonetheless, the defendant was factually a 'materialman' within the meaning of Texas law. 950 F.2d at 250 n. 7. 'Materialmen' do not receive protection from § 16.009. *Id.* at 949–50. Given the dearth of evidence currently in the record, it is unnecessary to grapple with this question at this time.

106 S.Ct. at 2556–57 (Brennan, J., dissenting). If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. *Id.*, 477 U.S. at 332, 106 S.Ct. at 2557 (Brennan, J., dissenting). If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the court need not consider either any evidence submitted by the non-moving party or whether the moving party has met its ultimate burden of persuasion that summary judgment should be granted in its favor. *See id.*

USG failed to discharge this initial burden in its original motion for summary judgment. In its original motion, defendant USG did not even mention, let alone demonstrate plaintiff's lack of evidence regarding, the issues of fraudulent concealment or wilful misconduct. These issues were raised by plaintiff MISD's pleadings. This failure would have been sufficient reason for the denial of USG's motion. However, MISD's offer of some evidence of fraudulent concealment or wilful misconduct was noted in the original memorandum opinion, in the event of a subsequent summary judgment motion by defendant USG, relating to § 16.009(e)(3), that might argue MISD had "no evidence" supporting these contentions. Because plaintiff had proffered some evidence supporting its allegations,[8] it would be incumbent upon USG, in any later summary judgment motion, to attempt to demonstrate the inadequacy of this evidence. *Celotex*, 477 U.S.

at 332, 106 S.Ct. at 2557 (Brennan, J., dissenting).

USG has demonstrated that any evidence submitted thus far by plaintiff is inadequate, as a matter of law, to show fraudulent concealment and, thereby, satisfied its burden of production in the motion for reconsideration. Defendant has submitted numerous cases that review the evidence plaintiff actually would rely upon for its allegations of fraudulent concealment. Three courts found the evidence to be insufficient to show all of the required elements for fraud or fraudulent concealment, or support an award of punitive damages. *Metropolitan Federal Bank of Iowa v. W.R. Grace and U.S. Gypsum*, No. 3–90 CIV 436 (D.Minn. Mar. 3, 1992); *Sealover v. Carey Canada, et al.*, No. CV–88–0643, 1992 WL 105494 (M.D.Pa. April 3, 1992); *Corbally v. W.R. Grace.*

Given this showing by USG, MISD could have (1) rehabilitated the evidence attacked by USG; (2) produced additional evidence showing the existence of a genuine issue for trial, as provided in Fed.R.Civ.P. 56(e); or (3) submitted an affidavit explaining why further discovery is necessary, as allowed by Fed.R.Civ.P. 56(f). *Celotex*, 477 U.S. at 332 n. 3, 106 S.Ct. at 2557–58 n. 3 (Brennan, J., dissenting). MISD failed to respond in any of these ways. If fraudulent concealment were the only escape hatch from the statute of repose, plaintiff could not take advantage of § 16.009(e)(3), as a matter of law, based on the evidence made available at this time.

However, the statute of repose also does not protect a party guilty of *wilful misconduct* in the performance of the construction of an 'improvement'. Throughout the his-

---

**8.** In its motion for reconsideration USG argues that the affidavit submitted by plaintiff MISD's attorney does not meet the requirements of Fed. R.Civ.P. 56(e). USG has neither specified why it believes the affidavit fails to satisfy Fed.R.Civ.P. 56(e) nor moved to strike it from the record. MISD's attorney averred that he has personal knowledge of "the facts stated in the . . . Brief", as Fed.R.Civ.P. 56(e) requires. *Cf. Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342, 349–50 (5th Cir.1958) (commenting negatively on the practice of attorneys' putting facts, even those within their personal knowledge, before the court).

It may be questioned whether MISD's counsel really has personal knowledge of all of the facts set forth in the brief (particularly those relating to USG's alleged acts of wilful misconduct or fraudulent concealment). But, by failing to move to strike the affidavit on these grounds, USG has waived this possible objection. *In re Teltronics Services, Inc.*, 762 F.2d 185, 192 (2nd Cir.1985); *Lacey v. Lumber Mut. Fire Ins. Co. of Boston*, 554 F.2d 1204, 1205 (1st Cir.1977). Mendacity in the affidavit of an officer of the court will not be presumed, but must be shown.

tory of Texas law, "wilful misconduct" has been defined in a manner akin to "gross negligence". *E.g., Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 917 (Tex.1981) (reviewing history of Texas' definition of "gross negligence"); *Harbin v. Seale,* 461 S.W.2d 591, 593 (Tex.1970) (citing with approval *People v. Nowell,* 45 Cal.App.2d Supp. 811, 114 P.2d 81, 82 (Cal.App.1941), for the proposition that wilful misconduct approximate recklessness, and stating both are related to gross negligence). Both terms have been construed as "that entire want of care which would raise the belief that the act or omission was the result of a conscious indifference to the rights or welfare of the person or persons affected by it." *Burk Royalty Co.,* 616 S.W.2d at 917 (collecting cases). It also should be noted that *Black's Law Dictionary* gives, as one of the definitions of "wilful misconduct": "an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care." *Black's Law Dictionary* 1600 (6th ed. 1990). For present purposes, the salient point is that while fraudulent concealment requires that the plaintiff demonstrate the defendant had actual knowledge of the facts allegedly concealed and a fixed purpose to conceal the wrong, *Timberlake v. A.H. Robins Co.,* 727 F.2d 1363, 1366 (5th Cir.1984), wilful misconduct does not mandate a showing of these elements.

Defendant's motion for reconsideration does not satisfy USG's initial summary judgment burden of production on the issue of wilful misconduct. The section in USG's brief dealing with § 16.009(e)(3) is entitled "Plaintiff Has No Evidence of Fraud." The substance of USG's argument does not address the elements of wilful misconduct at any point. Moreover, most of the authorities submitted by USG do not address the question of wilful misconduct in any way. With the out-of-state authorities, this is not surprising, since Minnesota and Pennsylvania consider only fraud and not wilful misconduct as grounds for escape from their respective statutes of repose. As for Texas cases considering § 16.009(e)(3), most, including Judge Sanders' opinion in Corbally, do not address the wilful misconduct exception to the statute of repose. Only *Ablin v. Morton Southwest Co.,* 802 S.W.2d 788, 793 (Tex.App.—San Antonio 1990, writ denied), gives the question any attention, and it summarily equates the term with "wantonness" or "malice", rather than providing a detailed exegesis of its denotations.

■ Courts must give effect to every word the legislature used in a statutory enactment, if possible. *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). USG simply has not shown the absence of a genuine issue of material fact on the question of wilful misconduct. Regarding potential evidence showing such misconduct, at least one court has found that the Saranac documents demonstrate actual notice of the hazards of asbestos on the part of USG. *Clarksville–Montgomery Cty. Sch. Sys. v. U.S. Gypsum Co.,* 925 F.2d 993, 1000 (6th Cir.1991). Moreover, as noted by Judge Sanders in Corbally, there are several published articles demonstrating scientific knowledge during the 1950's of the potential hazards of asbestos.

It is concluded that there is a genuine issue of material fact as to whether USG engaged in wilful misconduct "in connection with the performance of ... construction."[9] Therefore, summary judgment was properly denied on this ground as well. Defendant's motion for reconsideration of this issue will be denied. The question of whether USG committed wilful misconduct in connection with the work performed in

---

**9.** USG cites *Dallas Market Center Dev. Co. v. Beran & Shemire,* 824 S.W.2d 218, 222 (Tex. App.—Dallas 1991), in support of an argument that the only conduct that could be covered by § 16.009(e)(3) as a matter of law would be the concealment of the presence asbestos in its projects. While statutes of repose are to given liberal construction to effect the purposes of their enactment, *McCulloch v. Fox & Jacobs Inc.,* 696 S.W.2d 918, 921 (Tex.App.—Dallas 1985, writ ref'd n.r.e.), USG's crabbed reading of § 16.009(e)(3) is unwarranted. It is concluded that the use of materials of a hazardous nature could be "wilful misconduct ... in connection with the performance of ... construction" and, therefore, within § 16.009(e)(3).

regards to plaintiff MISD's buildings is an issue for the jury to decide.[10]

---

**10.** In a terse footnote in its reply to MISD's brief in opposition to reconsideration, USG argues for the first time that Tex.Civ.Prac.Rem.Code Ann. sec. 16.008, the statute of repose for engineers, applies to it. Given the late hour at which this argument has been raised, no consideration will be given to it.